**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| EXPRESS MOBILE, INC., ) | |
| ) | |
| Plaintiff, ) | Civil Action No.1:19-cv-01937-RGA |
| ) | |
| v. ) | ▉▉▉▉▉▉▉▉▉▉▉ |
| ) | |
| GODADDY.COM, LLC, ) | **REDACTED, PUBLIC VERSION** |
| ) | **Filed November 24, 2021** |
| Defendant. ) | |

**EXPRESS MOBILE, INC.'S MEMORANDUM IN SUPPORT OF**
**(1) MOTION FOR SUMMARY JUDGMENT OF NO INVALIDITY**
**UNDER 35 U.S.C. §§ 101 AND 112; (2) MOTION FOR SUMMARY**
**JUDGMENT OF NO EQUITABLE DEFENSES; AND**
**(3) MOTION TO EXCLUDE CERTAIN EXPERT**
**OPINIONS OF DAVID R. PERRY**

## TABLE OF CONTENTS

I.    EXPRESS MOBILE'S SUMMARY JUDGMENT MEMORANDUM ........................... 1

    A.    SUMMARY OF ARGUMENTS ............................................................... 1

    B.    NATURE AND STAGE OF THE PROCEEDINGS ............................................. 2

    C.    STATEMENT OF UNDISPUTED FACTS ........................................................ 2

        1.    Facts Relevant to Shopify's Patent Ineligibility Defense ........................... 2

        2.    Facts Relevant to Equitable Defenses ........................................................ 3

    D.    ARGUMENT ........................................................................................ 6

        1.    Argument Relating to Patent Eligibility and Definiteness ......................... 6

        2.    Argument Relating to Equitable Defenses ................................................ 22

    E.    CONCLUSION ...................................................................................... 31


II.   EXPRESS MOBILE'S MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE CERTAIN EXPERT OPINIONS OF DAVID R. PERRY .......................... 31

    A.    MR. PERRY'S AFFIRMATIVE DAMAGES OPINIONS ARE UNRELIABLE AND SHOULD BE EXCLUDED ............................................. 32

        1.    Summary of Mr. Perry's Affirmative Damages Opinions ....................... 32

        2.    Mr. Perry's Affirmative Damages Opinions Do Not Represent a Hypothetical Negotiation ........................................................................ 34

    B.    MR. PERRY'S OPINIONS ON OTHER NON-EXISTENT AND MISLEADING TRANSACTIONS SHOULD BE EXCLUDED ........................ 37

    C.    MR. PERRY'S RELIANCE ON NON-COMPARABLE AGREEMENTS SHOULD BE EXCLUDED ...................................................................... 38

    D.    CONCLUSION ...................................................................................... 40

## **TABLE OF AUTHORITIES**

**Cases**                                                                                          **Page(s)**

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*,
    960 F.2d 1020 (Fed. Cir. 1992)......................................................................23, 25, 27

*AbbVie Inc. v. Boehringer Ingelheim Int'l GmbH*,
    No. 17-CV-01065-MSG-RL, 2018 WL 2604825 (D. Del. June 4, 2018) .............................31

*Aptix Corp. v. Quickturn Design Sys., Inc.*,
    269 F.3d 1369 (Fed. Cir. 2001)...........................................................................................30

*In re ChanBond, LLC Pat. Litig.*,
    No. CV 15-842-RGA, 2020 WL 550786 (D. Del. Feb. 4, 2020) .........................35, 36, 37, 38

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014)...............................................................................1, 8, 10

*Eli Lilly & Co. v. Teva Parenteral Meds, Inc.*,
    845 F.3d 1356 (Fed. Cir. 2017)...........................................................................................14

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016)................................................................... *passim*

*GREE, Inc. v. Supercell OY*,
    No. 2:19-cv-00070-JRG-RSP, 2020 WL 4288345 (E.D. Tex. July 27, 2020) .......................39

*Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*,
    398 F. Supp. 2d 305 (D. Del. 2005).................................................................25, 26, 30

*IPA Techs., Inc. v. Amazon.com, Inc.*,
    352 F. Supp. 3d 335 (D. Del. 2019).......................................................................................8

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
    694 F. 3d 51 (Fed. Cir. 2012)..............................................................................................39

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009).......................................................................35, 36, 37, 38

*M2M Sols. LLC v. Enfora, Inc.*,
    167 F. Supp. 3d 665 (D. Del. 2016)..............................................................................39, 40

*Meyers v. Asics Corp.*,
    974 F.2d 1304 (Fed. Cir. 1992).............................................................................................25

*Meyers v. Brooks Shoe Inc.*,
  912 F.2d 1459 (Fed. Cir. 1990)......................................................................25

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
  572 U.S. 898 (2014).................................................................................1, 14

*Quanta Computer, Inc. v. LG Elecs., Inc.*,
  553 U.S. 617 (2008)......................................................................................28

*SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*,
  137 S. Ct. 954 (2017)....................................................................................28

*Sentius Int'l, LLC v. Microsoft Corp.*,
  No. 5:13-CV-00825-PSG, 2015 WL 451950 (N.D. Cal. Jan. 27, 2015) ...............40

*Shopify Inc. v. Express Mobile, Inc.*,
  2021 WL 4288113 (D. Del. Sept. 21, 2021) ................................................ *passim*

*Shopify Inc. v. Express Mobile, Inc.*,
  No. 19-439-RGA, D.I. 297 (Sept. 21, 2021)......................................................39

*Sprint Commc'ns Co. L.P. v. Comcast Cable Commc'ns LLC*,
  No. 11-2684-JWL, 2016 WL 7052055 (D. Kan. Dec. 5, 2016) ...........................27

*Sprint Commc'ns Co., L.P. v. Mediacom Commc'ns Corp.*,
  No. CV 17-1736-RGA, 2021 WL 982737 (D. Del. Mar. 16, 2021).............23, 26, 27, 29

*Takeda Pham. Co. Ltd. v. Zydus Pharms. USA, Inc.*,
  743 F.3d 1359 (Fed. Cir. 2014)......................................................................14

*TQ Delta, LLC v. 2Wire, Inc.*,
  373 F. Supp. 3d 509 (D. Del. 2019)...............................................................9, 10

*Visual Memory LLC v. NVIDIA Corp.*,
  867 F.3d 1253 (Fed. Cir. 2017).........................................................................8

*Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*,
  103 F.3d 1571 (Fed. Cir. 1997).....................................................................29, 30

*Williamson v. Citrix Online, LLC*,
  792 F.3d 1339 (Fed. Cir. 2015).......................................................................21

*Williamson v. Google*,
  2017 WL 3232582 (N.D. Cal. 2017) ...............................................................14

*Zimmer Surgical, Inc. v. Stryker Corp.*,
  365 F. Supp. 3d 466 (D. Del. 2019).................................................................6, 39

**Statutes**

35 U.S.C. § 101...................................................................................................... *passim*

35 U.S.C. § 112......................................................................................................20, 21

35 U.S.C. § 271(a).....................................................................................................28

**Other Authorities**

FED. R. CIV. P. 9(b)...................................................................................................31

FED. R. CIV. P. 12(b)(6)............................................................................................11

FED. R. CIV. P. 12(c)................................................................................................10

FED. R. CIV. P. 56(a)............................................................................................6, 9

FED. R. EVID. 403.................................................................................................37, 38

## TABLE OF EXHIBITS

| Exhibit | Description |
|---|---|
| 1 | Excerpt from Opening Expert Report of Kevin C. Almeroth, Ph.D., dated July 30, 2021 |
| 2 | Excerpt from Opening Expert Report of Philip Greenspun, Ph.D., regarding Invalidity of the Patent-in-Suit, dated July 30, 2021 |
| 3 | Excerpt from Rebuttal Expert Report of Kevin C. Almeroth, Ph.D., dated August 31, 2021 |
| 4 | Excerpt from Expert Reply Report of Philip Greenspun, Ph.D. regarding Invalidity of the Patents-in-Suit, dated October 1, 2021 |
| 5 | Excerpt from GoDaddy.com, LLC's Initial Invalidity Contentions, dated October 13, 2020 |
| 6 | Excerpt from GoDaddy.com, LLC's Third Supplemental Invalidity Contentions, dated June 16, 2021 |
| 7 | Excerpt from Rebuttal Expert Report of Kevin C. Almeroth, Ph.D., dated October 7, 2020, submitted in *Shopify Inc. and Shopify (USA), Inc. v. Express Mobile, Inc.* 19-cv-00439-RGA (D. Del.), XMO_GD00157923 |
| 8 | Excerpt from Opening Expert Report of Chris Schmandt regarding Invalidity, dated September 4, 2020, submitted in *Shopify Inc. and Shopify (USA), Inc. v. Express Mobile, Inc.* 19-cv-00439-RGA (D. Del.) |
| 9 | Excerpt from Reply Expert Report of Chris Schmandt, dated November 3, 2020, submitted in *Shopify Inc. and Shopify (USA), Inc. v. Express Mobile, Inc.* 19-cv-00439-RGA (D. Del.) |
| 10 | U.S. Patent Number 6,546,397 |
| 11 | U.S. Patent Number 7,594,168 |
| 12 | U.S. Patent Number 9,063,755 |
| 13 | U.S. Patent Number 9,471,287 |
| 14 | U.S. Patent Number 9,928,044 |
| 15 | Defendant GoDaddy.com, LLC's First Supplemental Responses and Objections to Express Mobile Inc.'s First Set of Interrogatories (Nos. 1-17) and Second Set of Interrogatories (No. 18), dated June 16, 2021 |
| 16 | Exhibit 12 to Deposition of Steve Rempell , taken on June 3, 2021, XMO_GD00278290 |
| 17 | T. Devlin Letter to GoDaddy, dated December 20, 2018, XMO_GD00075876 |

| Exhibit | Description |
|---|---|
| 18 | Exhibit 13 to Deposition of Steve Rempell , taken on June 4, 2021, XMO_GD00104830 |
| 19 | Excerpt from Transcript of GoDaddy.com LLC 30(b)(6) Designees Deposition, taken on June 16, 2021 |
| 20 | Exhibit 11 to Deposition of GoDaddy.com LLC 30(b)(6) Designees, taken on June 16, 2021, GD00006117 |
| 21 | Exhibit 12 to Deposition of GoDaddy.com LLC 30(b)(6) Designees, taken on June 16, 2021, GD00006118 |
| 22 | Exhibit 13 to Deposition of GoDaddy.com LLC 30(b)(6) Designees, taken on June 16, 2021, GD00006121 |
| 23 | Excerpt from Expert Report of David R. Perry, dated August 31, 2021 |
| 24 | Excerpt from Transcript of Robert Gilbertson Deposition taken on February 11, 2020 in *Shopify Inc. and Shopify (USA), Inc. v. Express Mobile, Inc.* 19-cv-00439-RGA (D. Del.), XMO_GD00278072 |
| 25 | Excerpt from Transcript of Robert Gilbertson Deposition taken on May 19, 2021 |
| 26 | Excerpt from Reply Expert Report of Kevin C. Almeroth, Ph.D., dated October 1, 2021 |
| 27 | Email from C. Welch dated July 19, 2017, ZURICH0003 |
| 28 | Excerpt from Transcript of Steve Rempell Deposition, taken on August 3, 2020 in *Shopify Inc. and Shopify (USA), Inc. v. Express Mobile, Inc.* 19-cv-00439-RGA (D. Del.), XMO_GD00154949 |
| 29 | Simple Agreement for Future Equity, RIZZOJOS_CYD00151 |
| 30 | Excerpt from Transcript of John Rizzo Deposition, taken on June 2, 2021 |
| 31 | Excerpt from Trial Transcript from *Rempell vs. Hoffman*, CIV. 1302527 (Cal. Sup. Ct., Marin County) , dated June 26, 2014, XMO_GD00154813. |
| 32 | Exhibit 16 to Deposition of GoDaddy.com LLC 30(b)(6) Designees, taken on June 16, 2021, XMO_GD00130211 |
| 33 | Excerpt from Transcript of Steven Rempell Deposition, taken on June 3, 2021 |
| 34 | Exhibit 1 to Deposition of GoDaddy.com LLC 30(b)(6) Designees, taken on June 16, 2021, GD00047293 |
| 35 | Excerpt from Transcript of Justin Tsai Deposition, taken on June 15, 2021 |
| 36 | Excerpt from Transcript of Adam Shankel Deposition, taken on June 2, 2021 |

| Exhibit | Description |
|---|---|
| 37 | Wayback captures from WebSite Tonight Tour website, last accessed on May 27, 2021, XMO_GD00278643 |
| 38 | Excerpt from Express Mobile, Inc.'s First Supplemental Responses to Defendant's First Set of Interrogatories (Nos. 1-11), dated March 5, 2021 |
| 39 | Excerpt from Transcript of David Perry Deposition, taken on November 2, 2021 |
| 40 | Excerpt from the certified file history for the '755 patent, XMO_GD00002848 – XMO_GD00002858 |
| 41 | WordPress subscriptions beginning October 2013, GD00107380 |
| 42 | Email from R. Gilbertson, dated August 23, 2013, XMO_GD00278393 |
| 43 | Excerpt from Supplemental Expert Report of David R. Perry, dated October 15, 2021 |

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| the '397 patent | U.S. Patent Number 6,546,397 |
| the '168 patent | U.S. Patent Number 5,941,168 |
| the '755 patent | U.S. Patent Number 9,063,755 |
| the '287 patent | U.S. Patent Number 9,471,287 |
| the '044 patent | U.S. Patent Number 9,928,044 |
| Asserted Claims | Claims 1, 2, 3, 11, and 37 of the '397 patent<br>Claims 1, 2, and 3 of the '168 patent<br>Claims 1, 3, 12, 16, and 22 of the '755 patent<br>Claims 1 and 13 of the '287 patent; and<br>Claims 1, 11, 13, 17, and 19 of the '044 patent |
| the patents-in-suit | U.S. Patent Number 6,546,397 (the '397 patent);<br>U.S. Patent Number 5,941,168 (the '168 patent);<br>U.S. Patent Number 9,063,755 (the '755 patent);<br>U.S. Patent Number 9,471,287 (the '287 patent); and<br>U.S. Patent Number 9,928,044 ('the '044 patent) |
| Web Design Patents | the '397 and '168 patents |
| Web Component Patents | the '755, '287, and '044 patents |

I.   **EXPRESS MOBILE'S SUMMARY JUDGMENT MEMORANDUM**

A.   **SUMMARY OF ARGUMENTS**

Express Mobile moves for summary judgment relating to certain invalidity and equitable defenses to streamline this case for trial.  There are no genuine issues of material fact with respect to the indefiniteness and patent eligibility defenses raised in this motion.[1]  GoDaddy also asserts numerous equitable defenses that are unfounded and ripe for summary judgment.  Express Mobile therefore respectfully requests the Court grant summary judgment on these issues.

**The Asserted Claims are patent eligible**.  The Asserted Claims are patent eligible under the *Alice/Mayo* two-step framework because (1) they are directed to systems and methods for building and generating web pages and websites "necessarily rooted in computer technology," *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014), and "improvement[s] to computer functionality itself," *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016)—not some abstract idea; and (2) they claim several inventive concepts. Three courts, including this one, have found the claims of the '397 and '168 patents patent eligible; and this court has likewise found the claims of the '755, '287, and '044 patents patent eligible. GoDaddy also did not submit any expert opinion on patent eligibility.

**The Asserted Claims are not indefinite.**  The Asserted Claims of the '755, '287, and '044 patents are not indefinite because they "inform those skilled in the art about the scope of the invention with reasonable certainty." *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014).  The plain meaning of the terms challenged are definite and would have been

---

[1] GoDaddy originally asserted dozens of prior art references spanning hundreds of different combinations and permutations.  Pursuant to a recent case narrowing schedule, GoDaddy has reduced its invalidity grounds under Sections 102 and 103 to a total of 25 grounds.  However, invalidity grounds remain under Section 101 and Section 112, and those grounds are the subject of this motion.

understood with reasonable certainty by the POSA in view of the specification and Express Mobile's expert's testimony. GoDaddy cannot dispute these disclosures and did not submit expert testimony in support of its indefiniteness arguments, suggesting that its technical experts tacitly agree with Express Mobile's constructions and definiteness positions on those claim terms.

**Express Mobile's infringement claims are not barred by any equitable defenses.**

GoDaddy raises several equitable affirmative defenses, including equitable estoppel and other ancillary defenses, in a weak effort to bar Express Mobile's claims of infringement. Express Mobile never stated or misled GoDaddy to believe it would not enforce its patents against GoDaddy. GoDaddy's assertions of silence after the parties discussed the potential sale of the Web Design Patents is woefully insufficient. GoDaddy's defenses are factually and legally unsupported and summary judgment should be granted.

## B.     NATURE AND STAGE OF THE PROCEEDINGS

Express Mobile filed this lawsuit against GoDaddy on October 11, 2019. (D.I. 1.) On June 1, 2021, the Court issued its order construing several disputed limitations, D.I. 121. Per the Court's request, the parties have submitted supplemental briefing on claim construction issues pertaining to the "virtual machine" ('397 patent) and "player" ('044 patent) claim terms, which the parties submitted on May 28, 2021—a ruling on those issues remains pending. (*See* D.I. 120.) The parties completed fact discovery on June 16, 2021, and expert discovery on November 3, 2021. (D.I. 14, 99, 141.) Trial is set for March 7, 2022. (D.I. 14 at 16.)

## C.     STATEMENT OF UNDISPUTED FACTS

### 1.     Facts Relevant to Shopify's Patent Ineligibility Defense

Express Mobile's technical expert, Dr. Almeroth, has previously submitted testimony to this Court demonstrating that the Asserted Claims of the '397 and '168 patents are patentable under 35 U.S.C. § 101. (Ex. 7, *Shopify* Almeroth Rebuttal, ¶¶ 789-796.) The Asserted Claims of the

'397 and '168 patents are "directed to" "specific improvements . . . to a process rooted in computing."  (Ex. 7 ¶ 795.)  GoDaddy's expert on invalidity issues, Dr. Greenspun, has not provided any opinion relating to this issue for these patents.

The Asserted Claims of the '397 and '168 patents include "the use of a browser-based build tool, contemporaneous preview of a designed website in a browser, storing user settings in a database, and the use of a runtime engine to generate webpages using those stored user settings." (Ex. 7 ¶ 796; *id*. ¶ 793.) Prior art systems did not include the claimed combination of browser-based web site editing, storing user selected settings in databases, and the use of runtime files to generate web pages.  (Ex. 7 ¶ 795, ¶ 790; Ex. 1, Almeroth Opening ¶¶ 83-87, 91.)

The Asserted Claims of the '755, '287 and '044 patents are also directed to a specific architecture, relating to the need to ensure that internet-connected devices can easily and efficiently connect to and display the content of web services available on the Internet.  (Ex. 1 ¶¶ 89-90, 110.) The '755, '287, and '044 patents implement functionality that allows for the efficient display of web service content on a device platform.  (Ex. 1 ¶ 110.) GoDaddy's technical expert on invalidity, Dr. Greenspun, also provides no expert opinion as to patent eligibility for these patents.  (Ex. 2, Greenspun Opening, Table of Contents.)

## 2.      Facts Relevant to Equitable Defenses

GoDaddy asserts numerous equitable defenses, including estoppel, laches, disclaimer, acquiescence, unclean hands, patent exhaustion, express or implied license, and/or waiver.  (D.I. 49, Answer, at 13-15; Ex. 15, Response to Interrogatory No. 9 at 7-10.)  Disclaimer and patent exhaustion are not pled.  (D.I. 49.) Express Mobile's interrogatory no. 9 requested that GoDaddy provide its factual and legal bases for these alleged defenses.  In response, GoDaddy relies on certain interactions between GoDaddy and Express Mobile in 2013 involving a potential sale of the Web Design patents and a subsequent "five and a half years" after those interactions ceased

3

before GoDaddy received a letter from Express Mobile alleging infringement.  (Ex. 15 at 7-10.)

In early 2013, Express Mobile reached out to several companies, including GoDaddy, regarding the potential sale of the '397 and '168 patents.  ████████████████████

████████████████████████████████████████████

████████████████████████ (*See* Exs. 20, 21, GD00006117-GD00006120.) ████████████

████████████████████████████████████████████

████████████████████████████████████████████

(Ex. 21, GD00006118.)[2] ████████████████████████

██████████████████ (Ex. 19,  GoDaddy 30(b)(6) Tr. at 181:9-186:6.)

Following GoDaddy's receipt of the letter, the parties had several interactions and held discussions (both oral and written).  ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████ (Ex. 19 at 193:5-195:7.) ████████

████████████████████████████████ (Ex. 1 ¶ 808.) ████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████ (Ex. 32) ████████████████████

████████████████████████████████████████████

---

[2] The letter also enclosed a CD that contained not only copies of the '397 and '168 patents, but also "[a] presentation deck providing an overview of the Patents."  (*Id*.)  The presentation further reinforced that "[d]etailed claim charts have been prepared with respect to services / products of specific entities," and that the "[s]eller will entertain requests to confidentially review such charts in live meeting with qualified potential purchasers." (Ex. 22 at GD00006140.)

███████████████████████████████████████████████. (Ex. 19 at 176:3-178:11, 189:21-190:5, 190:18-191:7.) ███████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████ (Ex. 33, Rempell Tr. at 79:24-83:13.)  Express Mobile discussed a patent sale with GoDaddy and never stated GoDaddy was not infringing or represented to GoDaddy that it would not sue GoDaddy for infringement.  (*Id.*; Ex. 19 at 203.)

GoDaddy offers subscription products referred to as Website Builder and Managed WordPress, which are accused of infringement in this litigation.  GoDaddy launched the two accused products in this case shortly after receiving the February 28, 2013 letter from Express Mobile.  GoDaddy launched the accused version 7 of its Website Builder in March or April 2013 and launched its Managed WordPress a few months later in 2013.  (Ex. 34, GD00047293 at -47296; Ex. 19 at 13:8-16 (discussing same document); Ex. 35, Tsai Tr. at 117:1-9 (testifying that customers were already using version 7 in March 2013); Ex. 41, GD00107380 (WordPress subscriptions beginning October 2013); Ex. 19 at 69:23-70:2.)  GoDaddy was capable of discovering its infringement as of March 2013 in light of the notice provided in the February 28, 2013 letter and attachments.  (Ex. 1 ¶ 809.)

Prior to the launch of version 7 of Website Builder, GoDaddy offered version 6 of its Website Builder.  (Ex. 1 ¶ 810.).  Version 6 suffered from certain deficiencies, including ███████ ████████████████████████████████████ (Ex. 1 ¶ 810; Ex. 19 at 10:1-12:14.)  Version 6 also did not have WYSIWYG capabilities—████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████ (Ex. 1 ¶ 810; Ex. 36, Shankel Tr. at 28:6-35:2; Ex. 37, XMO_GD00278643-XMO_GD00278657.)  After the launch of version 7 in

March or April of 2013 and the interactions with Express Mobile in May 2013, GoDaddy had a

significant marketing launch of version 7 ███████████████   (Ex. 35 at 118:18-24.)

Express Mobile ultimately sued over 100 entities for infringement, including numerous

cases that accused WordPress of infringing Express Mobile's asserted patents.  (Ex. 38, Response

to Interrogatory No. 11.)  On December 20, 2018, Express Mobile sent another letter to GoDaddy

with notice of infringement.  (Ex. 17, XMO_GD000075876.) ████████████████

████████████████████████████████████████████

███████████████████████  (*Id*.)  Express Mobile

filed the instant patent infringement lawsuit against GoDaddy in 2019.  (Ex. 19 at 187:23-189:6.)

**D.     ARGUMENT**

**1.     Argument Relating to Patent Eligibility and Definiteness**

"Patents are presumed valid and invalidity must be proven by clear and convincing

evidence."  *Zimmer Surgical, Inc. v. Stryker Corp.*, 365 F. Supp. 3d 466, 487 (D. Del. 2019) (citing

*Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91 (2011)).  GoDaddy cannot prove invalidity under

Sections 101 and 112, certainly not by clear and convincing evidence.  There is "no genuine

dispute as to any material fact and [Express Mobile] is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  The Court should grant Express Mobile's motion.

**a)     The Asserted Claims are patent eligible under § 101**

The Asserted Claims of all the patents-in-suit pass both steps of the *Alice*/*Mayo* two-step

framework.  Express Mobile has previously presented evidence before this Court that the Asserted

Claims of the '397 and '168 patents are not directed to abstract ideas at step one, and GoDaddy

did not and has not submitted any affirmative or countervailing evidence in support of its position.

And at step two, the Asserted Claims recite several inventive concepts.  Three courts, including

this one, have already found the claims of the '397 and '168 patents to be directed to improvements

6

to computer functionality, not abstract ideas; and this court has likewise determined that the claims of the '755, '287, and '044 are directed to improvements to computing functionality.  *See infra.* GoDaddy has apparently abandoned its contention that the '397 and '168 patents and '755, '287 and '044 patents are unpatentable subject matter, as it did not present any expert opinion from either of its technical experts concerning these patents.  Express Mobile therefore seeks summary judgment that the patents-in-suit are patent eligible under 35 U.S.C. § 101.

1)      **The Asserted Claims are eligible under the Mayo/Alice two-step framework**

**At step one, the Asserted Claims are not "directed to" an abstract idea.**  The Asserted Claims of the '397 and '168 patents are not "directed to" an abstract idea, but rather are "directed to" "specific improvements . . . to a process rooted in computing."  (Ex. 7, *Shopify* Almeroth Rebuttal ¶ 795).  Specifically, they are directed to "improvements to computer functionality itself," including browser-based WYSIWYG web-page-editing, storing user-selectable settings describing web page elements in a database, and using run time files to dynamically generate web pages from those settings.  The claims thus improved upon prior art which did not include the combination of browser-based web site editing, storing user selected settings in databases, and the use of runtime files to generate web pages.  (Ex. 7 ¶ 795; *id*. ¶ 790; Ex. 1 ¶¶ 83-87, 91; *see also* Ex. 3, Almeroth Rebuttal, ¶ 83)

The Asserted Claims of the '755, '287 and '044 patents are also not directed to an abstract idea, but rather to specific concepts, including a specific computing architecture, relating to the need to ensure that internet-connected devices can easily and efficiently connect to and display the content of web services available on the Internet.  (Ex. 1 ¶¶ 89-90, 110; Ex. 3 ¶ 85)

To the extent that GoDaddy has made arguments, they are unavailing. For the '397 and '168 patents, it asserts that the claims "are directed to the abstract idea of generating and displaying

7

elements that appear in the manner and format selected by a user," and analogizes to "newspaper layouts." (Ex. 5, GoDaddy Initial Invalidity Contentions at 23, 30-31.)  And for the '755, '287, and '044 family of patents, it has asserted that "[i]ndependent claims 1 and 12 of the '755 patent are directed to the abstract idea of building tools that are used to communicate with third parties via a structured 'form'," and has compared the '755 patent to filling out IRS tax forms.  (*See* Ex. 6, GoDaddy 3rd Supp. Invalidity Contentions at 34, 39, 43.)  This comparison ignores the detailed steps recited in the Asserted Claims.  For the '397 and '168 patents, it ignores the ordered combination that includes the user-selected settings, a database, and a runtime engine to generate webpages; and for the '755, '287, and '044 patents it ignores the ordered combination that recites, among other things, an authoring tool, the use of web components and symbolic names, and certain types of code that are used in combination to display web service content.

Recent Federal Circuit decisions are instructive.  In *DDR Holdings*, the Federal Circuit concluded that claims to "generating a composite web page that combines certain visual elements of a 'host' website with content of a third-party merchant" "clear the § 101 hurdle."  773 F.3d at 1249, 1255.  So, too, did the claims in *Enfish*, which concerned "an innovative logical model for a computer database."  *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1330 (Fed. Cir. 2016).  In both cases, the Federal Circuit concluded that the claims at issue were not "directed to" abstract ideas because they were "necessarily rooted in computer technology" and recited "improvement[s] to computer functionality itself."  *DDR Holdings*, 773 F.3d at 1257; *Enfish*, 822 F.3d at 1336; *see also Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1261 (Fed. Cir. 2017) ("improved computer memory system" not abstract); *IPA Techs., Inc. v. Amazon.com, Inc.*, 352 F. Supp. 3d 335, 347 (D. Del. 2019) (claims directed to improvement in underlying functionality "not to the abstract idea").  Likewise, this Court has concluded that "claims [that] are directed to a specific

8

improvement in how" a particular technological function "may be achieved" are not abstract. *TQ Delta, LLC v. 2Wire, Inc.*, 373 F. Supp. 3d 509, 520-21 (D. Del. 2019).

Ultimately, GoDaddy failed to submit any evidence that the Asserted Claims were directed to an abstract idea and GoDaddy's § 101 defense fails at step one with respect to all of the Asserted Claims. And, to the extent that GoDaddy *argued* that the claims are directed to an abstract idea (as discussed above), it did nothing more than "describ[e] the claims at such a high level of abstraction and untethered from the language of the claims," which "all but ensures that the exceptions to § 101 swallow the rule" (as it did with its "magazine layout" analogy for the '397 and '168 patents, and as it did with its "forms" analogy for the '755, '287, and '044 patents). *Enfish*, 822 F.3d at 1337. GoDaddy's § 101 defenses fail as a matter of law.

**At step two, the Asserted Claims contain several "inventive concepts."** Step one is dispositive here, as this Court has already confirmed. Regardless, GoDaddy's challenge also fails at step two. GoDaddy, again, submitted no expert opinion as to whether the Asserted Claims of any of the '397 and '168 patents, or the '755, '287, and '044 patents contain "inventive concepts"—i.e., something more than performance of "well-understood, routine, [and] conventional activities previously known to the industry." *Alice*, 573 U.S. at 225. Because GoDaddy did not submit any expert testimony directed to this issue, the factual record falls well short of creating a "genuine dispute as to any material fact" as to whether the Asserted Claims contain inventive concepts. *See* FED. R. CIV. P. 56(a).

Step two requires an analysis of "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 217. GoDaddy's experts failed to evaluate the elements of the Asserted Claims "as an ordered combination."

9

Both families of patents implemented functionality that was not well-understood, routine, and conventional.  The Asserted Claims of the '397 and '168 patents contain several inventive concepts including "the use of a browser-based build tool, contemporaneous preview of a designed website in a browser, storing user settings in a database, and the use of a runtime engine to generate webpages using those stored user settings."  (Ex. 7 ¶ 796; *id*. ¶ 793; Ex. 1 ¶ 86 (similar); Ex. 3 ¶ 83 (similar)).  And the evidence also shows that the '755, '287, and '044 patents implement functionality that was not well-understood, routine, and conventional because the ordered combination of claim elements relates to a particular architecture that allows for the efficient display of web service content on a device platform.  (Ex. 1 ¶ 110; Ex. 3 ¶ 85)  This should end the matter for the step two inquiry with respect to each of the patents-in-suit.  This is particularly true when viewing the claims "as an ordered combination," an analysis that has only been done by Express mobile's expert, Mr. Almeroth.  *Id*.  Simply put, like the claims in *DDR Holdings*, the Asserted Claims recite several inventive concepts that "resolv[e] [a] particular Internet-centric problem, rendering the claims patent-eligible."  773 F.3d at 1259.  And as in *TQ Delta*, they are "directed to a specific improvement" in addressing that problem.  373 F. Supp. 3d at 521.

### 2) Three courts have already confirmed patent eligibility of the Asserted Claims of the '397 and '168 patents

Three courts, including this court, have already concluded that the Asserted Claims of the '397 and '168 patents were not invalid under Section 101.  In *Express Mobile, Inc. v. KTree Computer Solutions Inc.*, 2:17-cv-128-JRG-RSP (E.D. Tex.), Judge Payne of the Eastern District of Texas denied the defendant's FED. R. CIV. P. 12(c) motion for judgment on the pleadings alleging that the claims are drawn only to abstract ideas under Section 101.  *Id*.  At step one, the court found that the claims "are not merely do-it-on-a-computer claims."  *Id*. at 2.  Rather, the claims "appear to address a problem particular to the internet: dynamically generating websites

and displaying web pages based on stored user-selected settings" and, therefore, "appear necessarily rooted in computer technology and directed to specific problems of and improvements to then-existing web publishing applications." *Id*. at 1 (citing *DDR Holdings*). At step two, the court was unconvinced "that these claims contain no inventive concept." *Id*. at 2. The court, therefore, denied KTree's motion.

Judge Seeborg of the Northern District of California reached the same conclusion in *Express Mobile, Inc. v. Code and Theory LLC*, 18-cv-04679-RS (N.D. Cal.) and *Express Mobile, Inc. v. Pantheon Systems, Inc.*, 18-cv-04688 (N.D. Cal.). D.I. 6-6. In those two cases, the defendants Code and Theory and Pantheon Systems moved to dismiss under FED. R. CIV. P. 12(b)(6), again alleging that the claims are drawn only to abstract ideas under Section 101. The court found the claims not comparable to claims found invalid under Section 101:

> The patents here are directed at a purportedly revolutionary technological solution to a technological problem—how to create webpages for the internet in a manner that permits "what you see is what you get" editing, and a number of other alleged improvements over the then-existing methodologies.

*Id*. at 5. The court found, instead, that "[a] more apt comparison is *Enfish*." *Id*. The court recognized that "*Enfish* drew a line between 'improvement[s] to computer functionality itself,' and 'economic or other tasks for which a computer is used in its ordinary capacity.'" *Id*. at 6 (quoting *Enfish*, 822 F.3d at 1336). And it concluded at step one that Express Mobile's claims are "directed to a specific improvement to the way computers operate." *Id*. The court therefore denied defendants' motions to dismiss.

These prior decisions were on the pleadings, but this Court has already arrived at the same result for the '397 and '168 patents based on a more complete record on summary judgment. This Court explained that "[a]s noted by other courts, the claims 'appear to address a problem particular

to the internet: dynamically generating websites and displaying web pages based on stored user selectings,' and, therefore, 'appear necessarily rooted in computer technology and directed to specific problems of and improvements to then-existing web publishing applications.'" *Shopify Inc. v. Express Mobile, Inc.*, 2021 WL 4288113, at *22 (D. Del. Sept. 21, 2021).   It emphasized that, "[e]ven on the fuller record before me, the conclusions drawn by these courts are accurate as to lack of abstraction of the same patent claims."  *Id.* at *22 n.15.   It already cited *Enfish* and rejected Shopify's attempt (like GoDaddy's here) to redefine the claims at a high level of abstraction untethered from the claim language (i.e., using a "newspaper layout" analogy).  *Id.* at *22 (noting that "Shopify analogizes the Web Design patents to laying out newspaper pages," but explaining that "[t]he Federal Circuit . . . has warned against 'describing the claims at such a high level of abstractions' (quoting *Enfish*, 822 F.3d at 1337)). And it ultimately concluded that "the claims are directed to a specific improvement[] of browser-based WYSIWYG web-page editing ('397 patent), storing user-selectable settings describing web page elements in a database (both ['397 and '168] patents), and using run time files to dynamically generate web pages from those settings (both ['397 and '168] patents).   Therefore, I determine that the asserted claims are not patent ineligible under § 101."  *Id.* at *22.

The record here on summary judgment compels the same result.  Each of Judge Payne, Judge Seeborg, and this Court found that the claims of the '397 and '168 patents passed step one because they are rooted in computer technology and recite improvements to its functionality.  (19-cv-439, D.I. 6-5, 6-6).  GoDaddy presented no expert testimony at step one, and the only evidence available (including Dr. Almeroth's step-one opinions previously presented and before this Court in *Shopify*) confirm that the Asserted Claims are not "directed to" an abstract idea.  *Supra* § I.D.1.a.  Therefore, the Court should grant summary judgment of no invalidity under Section 101.

    **3)**  **This Court previously found the Asserted Claims of the '755, '287, and '044 patents patent eligible**

  Shopify, like GoDaddy, asserted that the claims of the '755, '287, and '044 patents.  Also like Shopify, GoDaddy declined to submit any expert testimony on the Section 101 issue with respect to the '755, '287, and '044 patents—i.e., the Web Component patents.  As the Court noted, Shopify responded to Express Mobile's arguments (which are substantially identical here as they were in the Shopify case) by "agree[ing] not to challenge subject matter eligibility of the asserted claims of the Web Component patents."  *Shopify*, 2021 WL 4288113, at *22 n.14 (D. Del. Sept. 21, 2021).   This Court, accordingly, granted Express Mobile's motion for summary judgment of no § 101 invalidity as to the '755, '287, and '044 patent.  The record here compels the same result.

    **4)**  **This Court should reject GoDaddy's argument that certain claims of the '755 Patent lack utility**

  Separate from its patent eligibility arguments under 35 U.S.C. § 101, GoDaddy also asserts that "claims 12, 14-18, and 22 [of the '755 patent] fail the requirements of 35 U.S.C. § 101 because the term 'where said Application is a device-dependent code' lacks utility."  (Ex. 6 at 35.)  This argument is premised on the assertion that "the term 'where said Application is a device-dependent code' [in claim 12 of the '755 patent] is impossible" because "[t]he '755 patent defines an Application as, among other things, a 'device-independent program.'"  *Id.*  However, GoDaddy's argument makes no sense.  Just one week before GoDaddy's submission of its Third Supplemental Invalidity Contentions, the parties agreed that the construction of "where said Application is a device-dependent code" should be properly construed as "where said Application is a *device-independent* code," and the Court adopted that construction.  (D.I. 128 (June 7, 2021 proposed order) (emphasis added); D.I. 129 at 2 (June 8, 2021 order adopting construction). Accordingly, the Application is consistently "device-independent code" in the claims of the '755 patent, the premise of GoDaddy's utility-based § 101 argument is incorrect, and the argument should

therefore be rejected as a matter of law.

**b)      The Asserted Claims are not indefinite.**

Section 112 requires that "a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc.*, 572 U.S. at 910.  "Indefiniteness is a question of law," and is thus appropriate for summary judgment. *Eli Lilly & Co. v. Teva Parenteral Meds, Inc.*, 845 F.3d 1356, 1370 (Fed. Cir. 2017).  "Whether a claim is invalid for indefiniteness requires a determination whether those skilled in the art would understand what is claimed when the claim is read in light of the specification." *Takeda Pham. Co. Ltd. v. Zydus Pharms. USA, Inc.*, 743 F.3d 1359, 1366 (Fed. Cir. 2014).

The arguments recited in GoDaddy's invalidity contentions are generally conclusory and threadbare.  Three of the arguments are substantially equivalent to arguments for which this Court already granted summary judgment of no indefiniteness, and none of GoDaddy's indefiniteness arguments are supported by any expert opinions. These factors alone underscore that summary judgment of no indefiniteness should be granted.  *Shopify Inc. v. Express Mobile, Inc.*, 2021 WL 4288113, at *26-*27 (D. Del. Sept. 21, 2021) (granting summary judgment of indefiniteness for three claim terms); *Williamson v. Google*, 2017 WL 3232582, at *9-*10 (N.D. Cal. 2017).  Where the accused infringer does not present "any expert opinions on whether one of ordinary skill in the art would be able to determine the scope or meaning" of a claim term, the accused infringer "cannot meet its burden of showing indefiniteness by the clear and convincing standard." *Id.*

**1)      The Asserted Claims Are Not Indefinite Based on the Claimed "Data Format Type"**

GoDaddy asserts that the claims of the '287 and '044 patents are indefinite in light of language in the claims "data format type of the symbolic name." (Ex. 6 at 38, 43.)  However, the

POSA would find this claim language to have been reasonably certain.  (Ex. 1 ¶¶ 710-711; Ex. 3 ¶ 1432; Ex. 7 ¶¶ 1142-1147.)  Specifically, the POSA would have understood that the claim language refers to "data types" that correspond to particular symbolic names.  (Ex. 7 ¶¶ 1143, 1145-1147).   Notably, both Dr. Almeroth and one of GoDaddy's experts agree that the specification has numerous references to "data types."  (Ex. 1 ¶¶ 710-711; Ex. 3 ¶ 1432 (citing '755 Patent at 14:52-55, Table I); Ex. 8, *Shopify* Schmandt Opening ¶ 1428; Ex. 7 ¶ 1143.)  For example, table 1 of the specification lists "Data Types, Preferred Input, Input Candidates, Preferred Output and Output Candidates," as shown below.  (Ex. 3 ¶ 1432 (citing '755 Patent at 14:52-55, Table I); Ex. 13, '287 Patent at cols. 15-16.)  As Dr. Almeroth explained, this disclosure and table would place the POSA on "clear notice that the 'Data Types' supported by the invention include[] exemplary data types such a[s] Boolean, integers ('int'), string, list, RSSlist, and many more."  (Ex. 7 ¶ 1143; *accord* Ex. 3 ¶ 1432 ("data format type" would be understood to refer to "'data type[s]' such as 'Boolean,' 'Int,' 'String,' 'multilineString,' among others."); Ex. 1 ¶¶ 710-711 (noting that "associated data format class type corresponding to a subclass of User Interface (UI) objects" can refer, for example, to a "text field [UI object] for strings [data type]").)

TABLE I

| One embodiment of supported objects | | | | |
|---|---|---|---|---|
| Data Types | Preferred Input | Input Candidates | Preferred Output | Output Candidates |
| boolean | Check Box | Check Box | Check Box | Check Box |
| Int | Text Field (integer) | Text Field (integer) | Text Field (integer) | Text Field (integer) |
| | | Text Field (Phone #) | | Text Field (Phone #) |
| | | Text Field (SMS #) | | Text Field (SMS #) |
| | | Choice | | Choice |
| | | List (single select) | | List (single select) |
| | | | | Text Button |

The claim language of the '287 and '044 patents, meanwhile, establishes that the symbolic names are "related to a set of inputs and outputs of a web service"  (Ex. 13 at 37:51-61, Ex. 14, '044 at 37:51-61), and those inputs and outputs would be understood to have data types, such as Boolean, integer, string, among others, corresponding to web services that could be bound to

certain object candidates, as shown in the table.  (Ex. 7 ¶ 1144.)  Moreover, the prosecution history reinforces that the symbolic names can have corresponding data types, such as when "format types" (consistent with "data format types") are referenced in the prosecution history as being, for example, a "string," which is a data type for text.  (Ex. 40, XMO_GD00002848 at 2852-2853.) Mr. Schmandt, one of GoDaddy's experts, was reasonably certain of the term's meaning: during his analysis of the relevant claim language in *Shopify*, Mr. Schmandt asserted that "symbolic names hav[ing] associated data types" meet this limitation, consistent with Dr. Almeroth's understanding and the understanding of the POSA.  (Ex. 8 ¶ 1124.)

Ultimately, this Court in *Shopify* agreed that the "data format class types" (or "data format types") would have been data types supported by the invention such as Boolean, integers, strings, lists, and others.  *Shopify*, 2021 WL 4288113, at *26.  It granted summary judgment of no indefiniteness, concluding that "[a]s opined by Dr. Almeroth, a POSA would understand with reasonable certainty that that these data types share the property that they can be tied to a UI object and associated with a symbolic name, and each data type can represent a 'format' of data.  *Id*.  This finding by the Court directly contradicts GoDaddy's assertion that "a person of ordinary skill would not know what a data format type of a symbolic name is."  (Ex. 6 at 43.)  The POSA would know that a "data format type" is simply a data type that "can be tied to a UI object and associated with a symbolic name," as the Court has already held.  *Shopify*, 2021 WL 4288113, at *26.  The Court should grant summary judgment of no invalidity on this term for the same reasons.

2)      **The Asserted Claims Are Not Indefinite Based on the Claimed "Data Format Class Type Corresponding to a Subclass of User Interface (UI) Objects"**

GoDaddy also asserts that the claim language "data format class type" that corresponds to a "subclass of User Interface (UI) objects" is indefinite in light of the "subclass" language.  (Ex. 6 at 38, 43.))  Specifically, it argues that "[t]he meaning of the term 'subclass' is not reasonably

16

certain, as a person of ordinary skill would not know what 'subclass' refers to." (*Id.*) GoDaddy is wrong for similar reasons discussed immediately above. As Dr. Almeroth explained in *Shopify*, Table 1 of the '287 and '044 patents would have informed the POSA with reasonable certainty that the "data format class type" that corresponds to a "subclass of User Interface (UI) objects" is simply a data type corresponding to a subset of UI objects. (Ex. 7 ¶ 1148-1150.) This is consistent with his opinions submitted here. (Ex. 26 ¶ 464 (noting that "symbolic names . . . have an associated data format class type (e.g., string, etc.) corresponding to a subclass of User Interface (UI) objects, such as buttons, text fields, images and videos," and noting that this is consistent with Table I of the specification).

For example, returning to Table 1 above, for a symbolic name that corresponds to an input of a person's age, the "data format class type" would be an "integer" and there would be a set of UI objects, such as "Text Fields" or "Choice Fields" that can be associated with an integer input value. Those "Text Fields" or "Choice Fields" would be examples constitute of subclass of user interface objects, because they support the integer data type, but not necessarily other data types, as Table 1 illustrates. The "Subclass of User Interface (UI) objects" therefore "reflects those UI objects that are compatible with the 'Data Format'"—or data type—"for a particular symbolic name." (Ex. 26 ¶ 464; Ex. 7 ¶ 1149.) When confronted with this argument, Mr. Schmandt admitted in *Shopify* that this is "one potential explanation for what the claim language means." (Ex. 9 ¶ 1433.) Once again, in his invalidity rebuttal in *Shopify*, Mr. Schmandt asserted, consistent with Dr. Almeroth, that this claim element is met where "certain UI objects" are "specific to certain functions, and are [thus] subclasses of UI Objects." (Ex. 8 ¶ 1125.)

Consistent with the above arguments, this Court credited Dr. Almeroth's testimony and determined as a matter of law that "Table 1 of the '287 and '044 patent would have informed the

POSA with reasonable certainty that the 'data format class type' that corresponds to a 'subclass of User Interface (UI) objects' is simply a data type corresponding to a subset of UI objects.'" *Shopify*, 2021 WL 4288113, at *26. It explained that "[a] class would be reasonable understood by the POSA to correspond to the universe of data types that can correspond to UI objects described in the patent," and that "[a] POSA would have understood the 'Subclass of User Interface (UI) objects' 'reflects those UI objects that are compatible with the 'Data Format''—or data type— 'for a particular symbolic name.'" *Id.* The Court should arrive at the same decision for the same reasons provided there and above.

### 3) Asserted Claims 1, 11, 13, 17, and 19 of the '044 Patent Are Not Indefinite Based on the Claimed "Player" that "Utilizes Information…"

GoDaddy also asserts that the language of the '044 patent suggesting that the player "utilizes information stored in said database to generate for the display of at least a portion of said one or more web pages" is indefinite. (Ex. 6 at 42.) It baldly asserts that the term is "unintelligible," but GoDaddy provided no expert testimony to support its argument. *Id.* The claim language— which includes the phrase "said database"—would be reasonably certain to the POSA based on the claim language itself, which refers back to the fact that the player "uses information representative of said defined UI object and related settings in a database" (Ex. 14 at 38:15-16)— to generate the display of at least a portion of one or more web pages. (Ex. 26 ¶ 496 ("A POSA reading the claim in context, especially in connection with the next element 1[xiv] 'where said player utilizes information stored in said database to generate for the display of at least a portion of said one or more web pages' would understand the role of a player in relation to the building of an application is in generating web pages views that make up at least a portion of one or more web pages."); Ex. 7 ¶ 1151.) Mr. Schmandt did not dispute that meaning in the *Shopify* case. (*See id.*; Ex. 8 ¶ 1151.) Dr. Almeroth also has explained that there was extensive written description support

for that interpretation in the '044 patent itself. (Ex. 7 ¶ 1151 (citing '044 at 6:17-21, 8:26-9:28, 11:61-12:4, 33:54-61).)

As with the preceding terms, this Court granted summary judgment in favor of Express Mobile in the *Shopify* case.  It held that it "agree[d]" with Dr. Almeroth's interpretation, and concluded that "[a] POSA would understand the meaning of this term to be the same as if the 'for' were deleted," noting that "[t]he preposition does not hold any particular significance in light of the disclosures in the specification."  The Court should so hold here once again.

### 4) The Asserted Claims Are Not Indefinite Based on the Claim Term "Symbolic Names Required…"

For the '755 patent, GoDaddy asserts that the claim term "symbolic names required for evoking one or more web components each related to a set of inputs and outputs of a web service obtainable over a network" is indefinite.  (Ex. 6 at 33-34.)[3]   GoDaddy does not provide any expert opinion on this issue.  GoDaddy merely states in its invalidity contentions that "[t]he only symbolic names disclosed in the specification relate to UI components."  (*Id.* at 34.)  But it appears that GoDaddy is confused.  Symbolic names can relate to web components, which themselves can be implemented in the form of UI objects.  As Dr. Almeroth explained in his rebuttal report, "symbolic names are bound to *web components* (i.e., elements of a web page), that happen to be associated with inputs or outputs of web services."  (Ex. 3 ¶ 1555.)  Elements of a web page would have been understood to be a type of UI software object "for display on a web page" that relates to web services.  (*See* Ex. 1 ¶ 557.)  The Court has already construed web component, moreover, to refer to "software objects that provide functionalities of a web service," consistent with Dr. Almeroth's opinions.  (D.I. 129 at 2.)  In light of the Court's claim construction and these opinions,

---

[3]  This argument is not referenced for the '287 and '044 patents in the contentions.  To the extent that GoDaddy seeks to apply this argument to those patents as well, summary judgment of no invalidity should be granted for the same reasons.

the claim language is not indefinite as GoDaddy suggests.

5)      **The Asserted Claims Are Not Indefinite Based on the Claim Term "UI Object Corresponds To…"**

GoDaddy asserts that certain claims of the '755 and '287 patents are indefinite based on the claim term "UI object corresponds to [the/a] web component included in said registry selected from the group consisting of an input of the web service and an output of the web service." (Ex. 6 at 34, 38.)  GoDaddy again provides no expert testimony for this argument, and the sole basis for its argument is a bare assertion that "[t]he term is unintelligible." (*Id.*)  The POSA would understand that this claim term is clear on its face, and that it simply refers to UI objects on a display (such as text form fields, buttons, YouTube video controls, maps, etc.) that correspond to web components that relate to an input or output of a web service (such as a YouTube or Google Maps web service).  (*See* Ex. 1 ¶ 593.)

6)      **The Asserted Claims Are Not Indefinite Based on the Claim Term "Authoring Tool Configured To . . . "**

GoDaddy asserts that various claims of the '287 patent are indefinite because, in its view, the claim phrase "authoring tool configured to . . . " is subject to interpretation under 35 U.S.C. § 112, ¶ 6.  (Ex. 6 at 38-39.)  It asserts that "the claim term 'authoring tool' fails to recite sufficiently definite structure and/or recites function without sufficient structure for performing that function." *Id.*  It provides no expert testimony in support of this claim interpretation, and did not advance this argument during claim construction.  Meanwhile, the claim term "authoring tool" already has an agreed proposed construction that has been adopted by this Court—"a system, with a graphical interface, for generating code to display content on a device screen."  (D.I. 128 (June 7, 2021 proposed order); D.I. 129 at 2 (June 8, 2021 order adopting construction).)  This construction of authoring tool is consistent with the specification, which generally describes the authoring tool as a software program that ensures that code can properly display web service

content on a display. (*See, e.g.*, Ex. 13 at 1:36-41, 3:46-52.)

Against this backdrop, GoDaddy's assertion that the "authoring tool configured to . . ." should receive 35 U.S.C. § 112, ¶ 6 treatment makes no sense.  Here, the claim language in question does not use the word "means," meaning that there is a presumption that the claim language does not invoke § 112, ¶ 6.  *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015).  This presumption is overcome only where the term does not "have a sufficiently definite meaning as the name for structure" (*id.*), but the term "authoring tool" *does* have a definite, construed meaning in the context of this case. (D.I. 129 at 2). Therefore, any suggestion that this term receives 112, ¶ 6 treatment is wholly without merit.

Additionally, the suggestion that there is not enough disclosure under § 112, ¶ 2 for certain aspects of the authoring tool is meritless. (Ex. 6 at 39.)  With regard to any relationship between the authoring tool and the Player, the specification states that "[a]uthoring tool 112 may . . . be used to design one or more device-independent Applications and may also include information on one or more different devices 130 that can be used to generate a Player that specific devices may use to generate displays from the Application."  (Ex. 13 at 6:17-21.)  The "authoring tool" can also "be used to program a plurality of different devices 130, and routines may include device-specific routines."  *Id.* at 6:27-36.  Regarding the "associate the selected symbolic name with the defined UI object," the specification notes, for example, that "the user of interface 300 may assign or *associate actions or web bindings to UI objects* placed on canvas 305 with result in the programming device 130 that cause it to respond accordingly." (*Id.* at 14:29-33 (emphasis added).) These disclosures are more than adequate to support limitations relating to the authoring tool.

### 7)     Asserted Claim 11 of the '287 Patent Is Not Indefinite Based on the Claim Term "Said Code"

GoDaddy asserts that claim 11 of the '287 Patent is invalid for indefiniteness "because the

term 'said code' fails to inform, with reasonable certainty, those skilled in the art about the scope of the invention." (Ex. 6 at 39.) GoDaddy does not provide any expert testimony in support of this argument, and does not even provide a more detailed explanation for its argument in its invalidity contentions. The POSA would understand that the "said code" simply refers to the provision of the Application and Player code over a network. (*See, e.g.*, Ex. 13 at 1:43-50.) This is how both Drs. Almeroth and Greenspun appear to understand the claim term. (*See* Ex. 1 ¶ 692 ("GoDaddy provides the Application and Player code to website visitors over the Internet."). Indeed, Dr. Greenspun does not dispute that the Application and Player are provided over a network to meet this limitation, but suggests that in his opinion the "application and player" need not necessarily "be provided over the network at the same time." (Ex. 4, Greenspun Reply ¶ 843.) Given this, there is no dispute between the experts over what "*said code*" in claim 11 of the '287 patent refers to—at most, a dispute is limited to whether there is a temporal component to when "*said code*" can or must be sent. For this reason, the "said code" claim language is not indefinite, and summary judgment of no invalidity should be granted on this term as well.

## 2. Argument Relating to Equitable Defenses

GoDaddy raises several equitable affirmative defenses, including equitable estoppel and other ancillary defenses, in a weak effort to bar Express Mobile's claims of infringement. (D.I. 49 at 14-15 (Sixth Defense, Eighth Defense); Ex. 15 at 7-10.) GoDaddy does not even plead some of these defenses and all are factually and legally unsupported. Summary judgment should be granted.

### a) Summary Judgment of No Equitable Estoppel is Proper

GoDaddy must prove three elements for equitable estoppel: "(1) the patentee, through misleading conduct (or silence), leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer; (2) the alleged infringer relies on that conduct; and (3) the alleged infringer will be materially prejudiced if the patentee is allowed

to proceed with its claim." *Sprint Commc'ns Co., L.P. v. Mediacom Commc'ns Corp.*, No. CV 17-1736-RGA, 2021 WL 982737, at *1 (D. Del. Mar. 16, 2021); *see also A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1028, 1041 (Fed. Cir. 1992)).  GoDaddy has failed to raise any genuine issues of material fact as to each of these elements.

**First**, Express Mobile did nothing for GoDaddy to reasonably infer that Express Mobile would not enforce its patents.  GoDaddy spends most of its interrogatory response identifying conduct  learned ███████████████████████████████████████████ ████████████████████████ (Ex. 15 at 7–10.)  GoDaddy admits that it was not even aware of this alleged conduct until after this case was filed, and therefore this conduct could not possibly have misled GoDaddy and cannot be a basis for equitable estoppel.  *See Mediacom Commc'ns Corp*. 2021 WL 982737, at *1; *see also A.C. Aukerman Co.*, 960 F.2d at 1028, 1041.  What's left of GoDaddy's allegations is the following: ████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████ (Ex. 15 at 7–8; *see also* Exs. 17, 18.)  As shown below, this alleged conduct is also woefully insufficient to, and does not, support a defense of equitable estoppel.

The extent of Express Mobile's and GoDaddy's "relationship or contacts" is a 2013 discussion concerning Express Mobile's potential patent auction relating to the Web Design Patents.[4]  (*See* Exs. 15, 16, and 20-22.)  Express Mobile never told GoDaddy that GoDaddy

---

[4] GoDaddy's entire argument is based on the 2013 patent auction discussion relating to the Web Design Patents.  GoDaddy does not mention, much less come forward with any evidence, relating

infringed (or did not infringe), or that Express Mobile would bring litigation (or not bring litigation) against GoDaddy. (Ex. 16.) Instead, in the context of the auction, ███████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████ (Ex. 16.)

GoDaddy's corporate witness designated on this topic ██████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████ (*See* Ex. 19 at 201–203.) It is unreasonable for GoDaddy—a sophisticated technology company long-offering website-builders—to infer that it would never be sued on Express Mobile's website-builder patents simply because Express Mobile offered to sell them to GoDaddy ████████████████████████████

██████████████ (Exs. 20, 21; Ex. 16.)

GoDaddy's refrain that there was not a GoDaddy-specific claim chart also misses the mark. (Ex. 15 at 8.) GoDaddy identifies ███████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████ (*Compare* Ex. 15 at 8 *and* Ex. 16 ████████████████

████████████████████████████); *see generally* D.I. 1, Complaint; *id.* ¶ 46 ("Using the technology claimed by the Patents-In-Suit, GoDaddy's Website Builder and WordPress Websites (the "Accused Instrumentalities")...".) It is, again, unreasonable for GoDaddy—██████████████████████████████—to infer that Express Mobile would not enforce its patents against GoDaddy and GoDaddy's WordPress products.

GoDaddy's reference to silence after the parties' meeting in 2013 is also insufficient.

---

to the Web Component Patents that issued years later and were not discussed in 2013. Summary judgment on all equitable defenses relating to the Web Component Patents (to the extent GoDaddy has raised any) should therefore be granted.

"Silence alone will not create an estoppel unless there was a clear duty to speak." *A.C. Aukerman*, 960 F.2d at 1043-44. Rather, "inaction must be combined with other facts respecting the relationship or contacts between the parties to give rise to the necessary inference that the claim against the defendant is abandoned." *Id*. at 1042. Here, Express Mobile had no "duty to speak," as it was discussing a potential patent sale with GoDaddy. The "other fact"— █████████████

█████████████████████████████████████████████████████

█████████████████████████████████████, also does not support estoppel. *Meyers v. Brooks Shoe Inc.*, 912 F.2d 1459, 1464 (Fed. Cir. 1990) (finding that even "a suggestion of infringement coupled with an offer to license [which are not present here] followed by silence would suffice to establish equitable estoppel."). Furthermore, Express Mobile filed over 100 cases asserting infringement of the '397 and '168 patents, including accusing several parties of infringement by using WordPress website builder. (Ex. 38, Response to Interrogatory No. 11.) There is no evidence that Express Mobile ever suggested it abandoned any claim against GoDaddy.

**Second**, even assuming Express Mobile's conduct was misleading, GoDaddy must prove that it actually "relied on that conduct." *Honeywell*, 398 F. Supp. 2d at 314-15. GoDaddy has identified no reliance. GoDaddy states: ████████████████████████████████

█████████████████████████████████████████████████████

████████████ (Ex. 15 at 9.) That all may be true, but there is no evidence (and GoDaddy does not contend) that GoDaddy's business decisions were caused by its reliance on Express Mobile's conduct, or that, for example, GoDaddy would have changed course had Express Mobile sued at an earlier time. *See Meyers v. Asics Corp.*, 974 F.2d 1304, 1309 (Fed. Cir. 1992) ("Defendants make numerous conclusory assertions that they relied on Meyers conduct, but they have not presented undisputed facts to show that they did."); *A.C. Aukerman,* 960 F.2d at 1042–43 ("The

accused infringer must show that, in fact, it substantially relied on the misleading conduct of the patentee in connection with taking some action.").

Furthermore, the record shows that GoDaddy h

. To the contrary, GoDaddy admits that it

.[5]   (Ex. 19 at 208:24-209:2.)   In fact, GoDaddy failed to produce a privilege log in this case and therefore there is no evidence that any consideration of the patents ever took place.  There is no evidence showing GoDaddy relied on Express Mobile's conduct and its defense fails for this additional reason.

**Third**, GoDaddy cannot identify any material prejudice that results from reliance. *Honeywell*, 398 F. Supp. 2d at 314-15.  Again, GoDaddy describes its substantial business growth from 2013 to 2018. (Ex. 15.) Equitable estoppel requires more.  GoDaddy's "material prejudice" must be "due to its reliance." (*Id*.)  GoDaddy has identified no reliance, let alone a causal link between material prejudice and reliance.

Express Mobile is aware of the Court's recent decision in *Sprint v. Mediacom* denying summary judgment of no equitable estoppel, but that case is distinguishable from the record here. *Mediacom Commc'ns Corp.*, 2021 WL 982737, at *1.  In *Sprint v. Mediacom*, the Court found that "the long ago assertion of Sprint's patent rights combined with a decade's worth of inaction while

---

[5] Express Mobile asked GoDaddy what, if anything, GoDaddy did in response to the patent auction discussions in 2013. (Ex. 19, GoDaddy 30(b)(6) Tr. at 204–205.)  GoDaddy declined to respond on the grounds of privilege. (*Id*.)  GoDaddy is certainly entitled to maintain privilege, but it cannot use that privilege as both a sword and shield.  Having claimed privilege to shield discovery from Express Mobile over what actions GoDaddy specifically took, GoDaddy cannot not turn around and argue reliance to prove equitable estoppel.

Sprint interacted with Defendants and while Sprint knew what Defendants were doing to get VoIP services created a disputed issue of material fact." *Id*. at *1. No such facts exist in this case. Express Mobile did not threaten litigation or otherwise assert its patents against GoDaddy, which "distinguish[es] this case from the usual estoppel case, and makes it less likely that [GoDaddy] w[as] actually misled." *See Sprint Commc'ns Co. L.P. v. Comcast Cable Commc'ns LLC*, No. 11-2684-JWL, 2016 WL 7052055, at *14 (D. Kan. Dec. 5, 2016); *see also A.C. Aukerman*, 960 F.2d at 1022 (reversing summary judgment finding equitable estoppel because patentee's verbal communication with accused infringer suggesting infringement existed, offering a license, but not threatening immediate suit, followed by silence did not alone provide sufficient conduct to warrant an estoppel). Nor was there any decade-long business or contractual relationship—GoDaddy declined to buy Express Mobile's patents after a "very polite communication" and they both parted ways. (Ex. 15; Ex. 16; Ex. 19 at 202.) GoDaddy launched its accused products after receiving Express Mobile's letter. There are no genuine issues of material fact here, and the Court should grant summary judgment of no equitable estoppel.

> **b) GoDaddy's Other Ancillary Defenses Similarly Fail and Summary Judgment Is Proper**

GoDaddy lobs a laundry-list of other ancillary defenses at Express Mobile, most equitable in nature and eradicated or disfavored at law: "laches, disclaimer, acquiescence, unclean hands, patent exhaustion, express or implied license, and/or waiver." (Ex. 15 at 7; *see also* D.I. 49, Answer at 14-15, Sixth Defense, Eighth Defense.) GoDaddy's basis for each is the same, unremarkable story: In 2013, Express Mobile offered to sell its Web Design Patents to GoDaddy, GoDaddy declined, and Express Mobile remained silent for five years until sending GoDaddy a notice letter in December 2018. (*See* Exs. 16, 20-22, 17.) GoDaddy feigns "deception" from a "bait and switch" (Ex. 15 at 10), but merely because GoDaddy did not buy Express Mobile's

patents is not grounds to bar a patent owner from asserting its rights.  GoDaddy cannot sustain its

burden to prove these defenses, and the Court should grant summary judgment.

### 1)      Laches

GoDaddy pleads and maintains laches (D.I. 49, Answer at 14, Sixth Defense; Ex. 15 at 7,

10), but laches is no longer a viable defense to patent infringement.  *SCA Hygiene Prod. Aktiebolag*

*v. First Quality Baby Prod., LLC*, 137 S. Ct. 954, 961 (2017).  Thus, summary judgment is proper.

### 2)      Patent Exhaustion

"The longstanding doctrine of patent exhaustion provides that the initial authorized sale of

a patented item terminates all patent rights to that item."  *Quanta Computer, Inc. v. LG Elecs., Inc.*,

553 U.S. 617, 625 (2008).  GoDaddy does not even plead this defense and maintains it without

any basis.  (D.I. 49; Ex. 15 at 7.)  Express Mobile has never sold a patented item, and GoDaddy

has identified no such sale let alone authorized sale that terminates Express Mobile's rights.  (*See*

Ex. 15 at 7–10; Ex. 38, Express Mobile Response to Interrogatory No. 2.) There is no exhaustion.

### 3)      Express License

There is no express license between Express Mobile and GoDaddy.  There is no agreement

between  Express  Mobile  and  GoDaddy  at  all.   GoDaddy  itself  acknowledges  that ███████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████████████████"  (Ex. 15 at 8; Ex. 19 at 202███████████████)

That is quite far from the requisite meeting of the minds.  *See* 35 U.S.C. § 271(a) (defining an

infringer as "whoever without authority makes, uses, offers to sell, or sells any patented

invention") (emphasis added).  There is no dispute GoDaddy does not have an express license that

might authorize its otherwise infringing conduct.

### 4)      Acquiescence and Waiver

This Court has previously held, "at least in the factual circumstances" of *Sprint v. Mediacom*, that acquiescence and waiver "require more than equitable estoppel." *Mediacom Commc'ns Corp.*, 2021 WL 982737, at *2. "Silence is not enough." *Id.* "For acquiescence, the alleged infringer must show that the patentee 'made an affirmative grant of consent or permission' to the alleged infringer's conduct." *Id.* "For waiver, the alleged infringer must show: 'an existing right, knowledge of the right, [and] an actual intention to relinquish that right.'" *Id.*

For the reasons set forth above, GoDaddy fails to support equitable estoppel—its reliance on prolonged silence is insufficient. GoDaddy offers no additional facts to support acquiescence and waiver. (Ex. 15, Response to Interrogatory No. 9.) Summary judgment of no acquiescence and waiver is proper in such circumstances. *See Mediacom Commc'ns Corp.*, 2021 WL 982737, at *2. Moreover, GoDaddy identifies no "affirmative grant of consent or permission" by Express Mobile (acquiescence) or "actual intention to relinquish" its rights (waiver) and summary judgment is proper on that basis. *Id.*

### 5)   Disclaimer

GoDaddy does not specifically plead "disclaimer," and states only: "Express Mobile disclaimed any right to assert its patents against GoDaddy" in its interrogatory response. (Ex. 15 at 10.) Express Mobile is unaware of a "disclaimer" defense in this context, and GoDaddy seemingly just recasts acquiescence and waiver. Regardless, GoDaddy identifies nothing to suggest Express Mobile disclaimed its legal rights.

### 6)   Implied License

"An implied license signifies a patentee's waiver of the statutory right to exclude others from making, using, selling, offering to sell, or importing the patented invention." *Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1580 (Fed. Cir. 1997). The Federal Circuit has recognized implied licenses through (1) equitable estoppel, (2) legal estoppel, (3) acquiescence,

and (4) conduct, noting that these labels describe different categories of conduct that lead to a finding of an implied license, and not different kinds of licenses. *Id*. ("The label denotes the rationale for reaching the legal result."). GoDaddy does not specify the category or conduct that gives rise to an implied license in this case. (Ex. 15 at 10.) It offers only the same facts and concludes: "Express Mobile engaged in express or implied licensing of GoDaddy." *Id*. Regardless, "judicially implied licenses are rare under any doctrine" (*id*. at 1581), and the Court should grant summary judgment for the reasons stated above.

### 7)   Unclean Hands

Unclean hands requires clear and convincing proof that Express Mobile conducted itself in a manner to "shock the moral sensibilities of the judge" or offend "the dictates of natural justice." *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 398 F. Supp. 2d 305, 310 (D. Del. 2005); *Aptix Corp. v. Quickturn Design Sys., Inc.*, 269 F.3d 1369, 1374 (Fed. Cir. 2001). Such "unconscionable conduct" must also have "immediate and necessary relation to the equity that the claimant seeks in respect of the matter in litigation." *Honeywell*, 398 F. Supp. 2d at 310. GoDaddy cannot meet such a high bar.

GoDaddy alleges deceit, but Express Mobile's conduct in 2013——is hardly nefarious and certainly not "unconscionable." (Ex. 15.) GoDaddy does not allege inequitable conduct or fraud on the Patent Office or Court, and there is none. (*Id*.) Nor did Express Mobile deceive or lie to GoDaddy. Express Mobile's counsel—who, at the time, was simply trying to sell Express Mobile's patents—told GoDaddy that it ████████████████████████████████ ████████████████████████████████ ██████████████████████████ (Ex. 16 at XMO_GD00278292.)

In GoDaddy's words, ██████████████████████████████████████ (Ex. 19 at 202.)  This should not "shock the moral sensibilities" of the Court, and summary judgment is warranted.

GoDaddy has also failed to sufficiently plead its "unclean hands" defense, which sounds in fraud and bad faith and, which, under FED. R. CIV. P. 9(b), must be pled "with particularity." *See, e.g., AbbVie Inc. v. Boehringer Ingelheim Int'l GmbH*, No. 17-CV-01065-MSG-RL, 2018 WL 2604825, at *1 (D. Del. June 4, 2018).  The Court should grant summary judgment for this additional reason.

### E.   CONCLUSION

The Court should grant Express Mobile's motions for summary judgment and find that the Asserted Claims are not invalid under 35 U.S.C. §§ 101 or 112.  The Court should also grant Express Mobile's motion for summary judgment relating to GoDaddy's defenses of estoppel, laches, patent exhaustion, express license, acquiescence, waiver, disclaimer, implied license, and unclean hands (including, GoDaddy's Sixth and Eighth Affirmative Defenses).

## II.   EXPRESS MOBILE'S MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE CERTAIN EXPERT OPINIONS OF DAVID R. PERRY

Express Mobile seeks to exclude certain opinions of GoDaddy's damages expert, Mr. Perry, including: (1) Mr. Perry's affirmative damages opinions; (2) the damages opinions relating to non-existent and misleading transactions; and (3) reliance on settlement agreements. Mr. Perry's affirmative damages opinions are based on transactions that never occurred and a percentage of revenue based on unlicensed parties' gross revenue (i.e., not accused or otherwise relevant revenue valuing the patented technology). Mr. Perry also relies upon numerous transactions or licenses that never occurred and are not a proper basis for a reasonable royalty.  Finally, Mr. Perry improperly relies on settlement agreements that should be excluded, or, at the very least, limited only to the

form of the agreements.

### A.   MR. PERRY'S AFFIRMATIVE DAMAGES OPINIONS ARE UNRELIABLE AND SHOULD BE EXCLUDED

#### 1.   Summary of Mr. Perry's Affirmative Damages Opinions

Mr. Perry's opinion is that a "lump-sum royalty" would have resulted from a ▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Ex. 23, Perry at 55-56.)   The problem, however, is that

Express Mobile neither committed to sell its patents for ▇▇▇▇▇▇▇▇▇ nor agreed to license its

patents for ▇▇▇▇▇▇ to the world's largest technology companies.   Mr. Perry's affirmative

damages opinion is therefore based on at least two assumptions that never happened, cannot

support a reasonable royalty, and his affirmative damages opinions should be excluded.[6]

First, Mr. Perry incorrectly claims that Express Mobile committed to selling the Web

Design Patents for ▇▇▇▇▇ at a potential auction in May 2013.   (Ex. 23 at 55.)   Mr. Perry's

assumption is based on one snippet of  Mr. Rempell's deposition testimony where he merely

testified that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Ex. 23 at 15; Ex. 31,

Rempell 06/26/2014 Tr. at 285-286 (XMO_GD00154838).)   Express Mobile's ▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇

Second, Mr. Perry claims that "Express Mobile had agreed ▇▇▇▇▇▇▇▇▇▇

---

[6] Mr. Perry provides alleged criticism of Mr. Bratic's damages opinion.  Express Mobile is not moving to exclude Mr. Perry's opinions in their entirety, but rather his improper affirmative damages opinion and certain other improper and unfounded opinions.

██████████████████████████████████████████" for a ████████████████████

█████████ (Ex. 23 at 55.)  Mr. Perry relies on an email from Express Mobile's attorney, Mr.

Gilbertson, inviting ████████████████████████████ amongst other

consideration. (Ex. 23 at 19, fn. 66 (citing XMO_GD00278393, 394).) Mr. Perry, however,

completely ignores that the parties were  further discussing ███████████████████

███████████████ (*Id.*; Ex. 42, XMO_GD00278393, 394.) Furthermore,

the evidence shows there was no agreement because the parties did not agree on many things

including ████████████████. (Ex. 23 at 19 ████████████████ Ex.

24, Gilbertson 2/11/2020 Tr. at $77 - 78$.)  Therefore, Mr. Perry again relies on an agreement that

does not exist and cannot be the basis for a reasonable royalty analysis.

Third, based on his incorrect assertion that Express Mobile was willing to license ████████

██████████ Mr. Perry then assumes Express Mobile's would be willing to non-exclusively

license its patents to four companies that Express Mobile has since sued for infringement.  (Ex.

23 at 56.)  Again, none of these four companies were actually licensed by Express Mobile.  (Ex.

23 at 19 ██████████████████.  Mr. Perry then compares GoDaddy's total U.S. revenue to the

total U.S. revenue of these four companies.  Mr. Perry admits that the four companies were never

licensed and that he used total U.S. revenue, not accused revenue or revenue related to website

builders or other relevant technology.  (Ex. 23 at 57; Ex. 39, Perry 11/02/2021 Tr. at 16-17.)  Thus,

in addition to using a fictitious license agreement that never happened, Mr. Perry uses irrelevant

sales numbers that have no relation to the asserted patents, relevant technology or this case.[7]

---

[7] Mr. Perry concludes that reasonable royalty damages would be ████████ for the Web Design
Patents and between ████████████████ for the Web Component Patents. (Ex. 23, Perry at 59.)
Mr. Perry arrives at ███████████████████████ which is the percentage
comparison of GoDaddy's US revenues in 2012 and 2013 to those of ████████████████.

Ultimately, Mr. Perry's affirmative damages opinions rest upon the following fictional and incorrect assumptions: Express Mobile agreed to sell its patents for ████████████████████ ████████████, an assumption that Express Mobile would license four companies in 2013 that it has since sued and that are not licensed, and a comparison of total U.S. sales of those companies to GoDaddy's U.S. sales.  It is undisputed that no such transactions occurred and that the U.S. sales used are gross and do not relate to use of patented technology.  Because those incorrect assumptions are foundational to Mr. Perry's affirmative damages opinions, his affirmative damages opinions must be excluded.

### 2. Mr. Perry's Affirmative Damages Opinions Do Not Represent a Hypothetical Negotiation

**First, Express Mobile was not obligated to sell the patents for** ██████████ **and the alleged circumstances do not involve a willing licensor and willing licensee**.  As summarized above, Express Mobile engaged in a patent auction process in an attempt to sell the Web Design Patents.  The Web Component Patents were not yet issued and were not involved.  (Ex. 23 at 3.) Mr. Rempell testified that as part of its agreement with its law firm, Green Espel, ████████ ████████████████████████.  Mr. Perry twists that agreement, ████████████████ ████████████████████████████ (Ex. 23 at 15.)  To the contrary, Mr. Gilbertson, Express Mobile's lawyer from Green Espel, testified that ███████████████████████████ (Ex. 25, Gilbertson 5/19/21 Tr. at 60.)  Moreover, it is beyond dispute that ██████████████ ████████████████████████████████ Mr. Perry relies on a non-existent transaction at ██████████ that does not involve any actual offer, transaction, or willingness to accept.

---

(Ex. 23, Perry at 57-58.)  Mr. Perry further compares the relative weightings applied by Mr. Bratic for the asserted patents (i.e., ████████████████), and multiplies the ████████████████ ██████ (Ex. 23, Perry at 58.)  He lastly opines that the ████████████████ for the Web Component Patents would be something between that ████████████ (i.e., ████████████ ██████ for the Web Design Patents).  (Ex. 23, Perry at 58.)

Exclusion is proper under such circumstances because the hypothetical negotiation assumes that there is a willing licensor and a willing licensee, a showing that Mr. Perry cannot make regarding these circumstances. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324-25 (Fed. Cir. 2009) ("In other words, if infringement had not occurred, willing parties would have executed a license agreement specifying a certain royalty payment scheme. The hypothetical negotiation also assumes that the asserted patent claims are valid and infringed."). This Court has excluded expert testimony where (1) the transaction in question did not value the patents and (2) where the alleged circumstances did not "represent a hypothetical negotiation with a willing licensee." *See In re ChanBond, LLC Pat. Litig.*, No. CV 15-842-RGA, 2020 WL 550786, at *1-*3 (D. Del. Feb. 4, 2020) ("A non-agreement at a distant time period has so little probative value that its probative value is substantially outweighed by the danger of unfair prejudice…"). Here the alleged agreement from which Mr. Perry derives the ███████ was between Mr. Rempell and his lawyers (not a willing licensee and licensor), ████████████████████████████████ █████████████████████████████████████.

Mr. Perry's opinions as to the 2013 patent auction, the ████████ amount and his affirmative damages opinions based thereon (Ex. 23 § 3.3.2.4 and § 4) should be excluded as unreliable.[8]

**Second, Express Mobile did not agree to issue a non-exclusive license to the Web Design Patents for ██████████, and the alleged circumstances relating to ███████ do not represent a willing licensor and a willing licensee**. Mr. Perry again twists the record to support

---

[8] Mr. Perry's opinions as to the Web Components should be excluded for the additional reason that those patents had not yet issued at the time of the patent auction. *See In re ChanBond*, 2020 WL 550786, at *1 (circumstances cannot be representative of a hypothetical negotiation for a license to the patents-in-suit when the patents-in-suit did not yet exist).

his opinion that Express Mobile agreed to a non-exclusive license of the Web Design Patents for

███████████. Specifically, Mr. Perry cites an email from Mr. Gilbertson to ██████ which states that



█████████████ (Ex. 2, at 19, fn. 66 (citing XMO_GD00278393, 394).) Thus, that █████████

██████████████████████████████   ███████████████████

████████████ Mr. Perry wildly mischaracterizes that evidence and further ignores that Mr.

Gilbertson testified that █████████████████████████████████████████

█████████████████████████████████. (Ex.

24, Gilbertson 2/11/2020 at 77 – 78.)

Mr. Perry therefore again relies on a non-existent transaction that wildly mischaracterizes

the record evidence and cannot represent the hypothetical negotiation.  Exclusion is proper under

such circumstances, even assuming that Express Mobile made a ██████████████ (which

it did not). *Lucent Techs.*, 580 F.3d at 1324-25 (requiring a willing licensor and willing licensee

valuing the patents in the hypothetical negotiation); *In re ChanBond*, 2020 WL 550786, at *3

("Because no company responded to the [] offer, the situation does not represent a hypothetical

negotiation with a willing licensee.").

Mr. Perry's opinions as to the 2013 patent license negotiations, the ██████████ amount

(Ex. 23 § 3.3.2.5) and his affirmative damages opinions based thereon (including the allegedly

██████████████████) (Ex. 23 § 4) must be excluded as unreliable.

**Lastly, Mr. Perry's reliance on gross revenues of unlicensed companies do not value**

**the patented technology and must be excluded**.  As explained above, Mr. Perry compares

GoDaddy's total US revenue to the total US revenue of four companies that he alleges Express

Mobile would have licensed in 2013.  Mr. Perry admits that these four companies were never licensed and that he used total US revenue, not accused revenue or revenue related to the patented website builder technology.  (Ex. 23 at 57; Ex. 39 at 16-17.)  Because no license in fact occurred and the revenues used by Mr. Perry are not attributed to website building technology, let alone the patented technology specifically.  *See Lucent Techs., Inc.*, 580 F.3d at 1324-25 (requiring circumstances that represent a willing licensee and a willing licensor for the hypothetical negotiation); *In re ChanBond*, 2020 WL 550786, at \*1-\*3 (excluding damages opinions for lack of willing licensor and willing licensee and for not valuing the patents).

Mr. Perry's opinions as to revenues that are not related to (Ex. 23 Perry at 56-57) and his affirmative damages opinions based thereon (Ex. 23 Perry § 4) must be excluded as unreliable.

## B.  MR. PERRY'S OPINIONS ON OTHER NON-EXISTENT AND MISLEADING TRANSACTIONS SHOULD BE EXCLUDED

Mr. Perry opines on additional alleged transactions that either did not occur or are not relevant to the hypothetical negotiation.  Mr. Perry fails to establish (and in many cases does not contend) that any of the below alleged transactions are relevant or comparable to the hypothetical negotiation.  Notably, the probative value of each of these alleged transactions is minimal (if existent at all), because Mr. Perry does not ultimately rely on any of the below to support his affirmative damages opinions.  Thus, even if any of the following have any marginal relevance, the probative value is substantially outweighed by the danger of undue prejudice.  Fed. R. Evid. 403.  Mr. Perry's opinions as to the information described below must be excluded as unreliable.

In § 3.3.2.8, Mr. Perry opines on information in the ███████████████████ ████████████████ following Mr. Rempell's debilitating car accident in 2011.  Specifically, Mr. Perry relies on ███████████████████████████████████████████ ████████████████████████████████████████████████████ (Ex. 23

at 28-29; Ex. 27.)  Mr. Perry also relies on Mr. Rempell's ████████████████████

████████████████████ (Ex. 23 at 29; Ex. 28 at 313-316.)  Mr. Perry

ignores that Mr. Rempell testified that ████████████████████████████████

████████████████████████████████████████████████████████████████

(Ex. 28 at 313-316.)  The ████████████████████████████████████████

██████████████ that Mr. Perry relies on in § 3.3.2.8 must be excluded because neither relate

to the value of the patents and do not represent a willing licensor and a willing licensee.  *See Lucent*

*Techs.*, 580 F.3d at 1324-25; *In re ChanBond*, 2020 WL 550786, at *1-*3.

In § 3.3.2.9, Mr. Perry opines the Express Mobile entered into a license agreement with

██████████.  No license agreement existed.  The agreement on which Mr. Perry relies is

merely an agreement for Express Mobile to invest in ██████, not a license agreement.  (Ex. 23

at 30-31; Ex. 29.)  While the parties later discussed ██████ potential making a product in the

future, no product was ever developed and no license was ever drafted or negotiated, much less

entered.  Indeed, John Rizzo, ██████████ Chief Technology Officer, testified that ████████

█████████████████████████████████████.[9] (Ex. 30 at 23, 148.)  Mr.

Perry's reliance on a non-existent transaction many years after that hypothetical negotiation date

is unreliable and must be excluded as not representative of the hypothetical negotiation and as

unduly prejudicial.  FED. R. EVID. 403; *Lucent Techs.*, 580 F.3d at 1324-25; *In re ChanBond*, 2020

WL 550786, at *1.  Mr. Perry's opinions as to CY Digital (Ex. 23 § 3.3.2.9) should be excluded.

### C.  MR. PERRY'S RELIANCE ON NON-COMPARABLE AGREEMENTS SHOULD BE EXCLUDED

---

[9] Mr. Perry's reliance on draft presentations that refer to a license and an interrogatory from another case do not show that Express Mobile licensed ██████.  Notably, Mr. Perry chose not to consider the interrogatory answers from this case on this issue or the supplemental interrogatory from the case he cites.

Mr. Perry opines on 55 settlement agreements entered into by Express Mobile.  Mr. Perry admits that all 55 agreements "resolved pending or potential litigation"  (Ex. 23 at 23) and that

██████████████████████████████████████████████████████████████

████████████████████████████  (Ex. 43, Perry Supp. at 27). Mr. Perry does not opine that any of the agreements are comparable to the hypothetical negotiation.  (Ex. 23 § 3.3.2.7.)  Instead, Mr. Perry concludes that the settlement agreements are ████████████████████████████████████ because they are lump sums not running royalties.  (Ex. 23 at 28.)

This Court recently evaluated these exact settlement agreements in the context of the *Shopify* case, and found that Defendants' damages expert was permitted to rely on the settlement agreements only to support his opinion as to the lump sum form of the reasonable royalty. *Shopify Inc. v. Express Mobile, Inc.*, No. 19-439-RGA, D.I. 297 at 59 (Sept. 21, 2021).  Reliance beyond the lump sum form, including reliance on the amounts of the agreements, was prohibited by the Court.  *Id*.  This is entirely consistent with prevailing standards requiring a damages expert to specifically establish economic and technical comparability in order to rely on a settlement agreement, because reliance on settlement agreements is generally unreliable to support a hypothetical negotiation.  *See, e.g., LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F. 3d 51, 77 (Fed. Cir. 2012) (expressing "longstanding disapproval of relying on settlement agreements to establish reasonable royalty damages"); *M2M Sols. LLC v. Enfora, Inc.*, 167 F. Supp. 3d 665, 678-679 (D. Del. 2016) ("[F]or a license to be used in a damages analysis, the license must be proven comparable to the hypothetical negotiation."); *GREE, Inc. v. Supercell OY*, No. 2:19-cv-00070-JRG-RSP, 2020 WL 4288345, at *4 (E.D. Tex. July 27, 2020) (specifically prohibiting reference to "the dollar amount" of the agreements); *Zimmer Surgical, Inc.*, 365 F.Supp.3d at 496 (excluding opinions relying on settlement agreement as not economically comparable where it was "made in

the context of settling a litigation dispute") (references omitted); *Sentius Int'l, LLC v. Microsoft Corp.*, No. 5:13-CV-00825-PSG, 2015 WL 451950, at \*7-\*8 (N.D. Cal. Jan. 27, 2015) (settlement agreement was of "limited usefulness," prejudicial, and did not pass muster under *Daubert* for failure to affirmatively establish comparability).

     Mr. Perry separately opines that ██████████████████████████████████ ████████████████████████████████ (Ex. 23 at 9.)  Mr. Perry relies on those agreements in limited fashion with regard to the lump sum form of those agreements. (Ex. 23 at 9.)  Mr. Perry does not perform any comparability analysis and instead relies entirely on GoDaddy's in-house counsel, Mr. Redman.  (Ex. 23 at 9.)  Mr. Perry admitted that no technical comparability analysis was performed with regard to those agreements and he did not rely at all on GoDaddy's technical expert, Mr. Kent.  (Ex. 39 at 28-29.)  Mr. Perry's testimony about these GoDaddy agreements must be excluded for the same reasons as set forth above with the Express Mobile settlement agreements.  The GoDaddy agreements present a much stronger basis for exclusion because, as Mr. Perry admits, no technical comparability analysis was performed.  *See, e.g., M2M Sols. LLC*, 167 F. Supp. 3d at 678-679 (requiring affirmative establishment of comparability); *Sentius Int'l, LLC*, 2015 WL 451950, at \*7-\*8 (same).

     Mr. Perry's opinions as to the settlement agreements (Ex. 23 § 3.3.2.7, Appendix C, and the agreements themselves) and GoDaddy agreements (Ex. 23 § 3.3.1) must be excluded.  To the extent allowed, testimony should be limited to the form of the agreements as a lump sum.

### D.    CONCLUSION

     The Court should exclude Mr. Perry's affirmative damages opinions (Ex. 23 §§ 3.3.2.4, 3.3.2.5, and 4), opinions relating to other non-existent and misleading transactions (Ex. 23 §§ 3.3.2.8 and 3.3.2.9), and opinions relating to non-comparable agreements (Ex. 23 §§ 3.3.1 and 3.3.2.7).

Dated:  November 17, 2021

**DEVLIN LAW FIRM LLC**

*/s/ Timothy Devlin*
Timothy Devlin (No. 4241)
1526 Gilpin Avenue
Wilmington, Delaware 19806
Tel: (302) 449-9010
tdevlin@devlinlawfirm.com

*OF COUNSEL:*

James R. Nuttall (*pro hac vice*)
Michael Dockterman (*pro hac vice*)
Katherine H. Johnson (*pro hac vice*)
Robert F. Kappers (*pro hac vice*)
Tron Fu (*pro hac vice*)
**STEPTOE & JOHNSON LLP**
227 West Monroe, Suite 4700
Chicago, IL 60606
(312) 577-1300
jnuttall@steptoe.com
mdockterman@steptoe.com
kjohnson@steptoe.com
rkappers@steptoe.com
tfu@steptoe.com

Christopher Suarez (*pro hac vice*)
**STEPTOE & JOHNSON LLP**
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000
csuarez@steptoe.com

*Attorneys for Plaintiff Express Mobile, Inc.*

41

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that copies of the attached documents were

served on counsel of record via electronic mail on November 17, 2021.


<u>*/s/ Timothy Devlin*</u>
Timothy Devlin