**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| EXPRESS MOBILE, INC., | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No.1:19-cv-01937-MFK |
| v. | ) |
| | ) ████████████████████ |
| GODADDY.COM, LLC, | ) |
| | ) **REDACTED, PUBLIC** |
| Defendant. | ) |
| | ) |

**PLAINTIFF EXPRESS MOBILE, INC.'S MEMORANDUM IN SUPPORT
OF ITS MOTIONS *IN LIMINE***

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

I.      MOTION *IN LIMINE* NO. 1:  Marking Defense ........................................................ 2

II.     MOTION *IN LIMINE* NO. 2: Materials Withheld From Discovery ................................ 3

        A.      Historical Pricing of Accused Products and Subscription Plan Data ................... 3

        B.      Extent of Use .............................................................................................. 5

III.    Motion *In Limine* No. 3:  Irrelevant Financial Evidence And Argument ......................... 5

        A.      Exhibits Previously Excluded .......................................................................... 6

        B.      Alleged Three-Tiered Licensing Program ........................................................... 7

        C.      Express Mobile Tax Returns and Related Financial Information ........................... 7

        D.      2011 Proposal and 2012 ██████ Sale of Web Design Patents to Express Mobile .... 9

        E.      Discussions With RPX Relating to the Web Design Patents ................................ 10

IV.     MOTION *IN LIMINE* NO. 4:  Derogatory Statements About Express Mobile ............... 10

V.      MOTION *IN LIMINE* NO. 5:  Arguments or Evidence Regarding the Court's
        Summary Judgment Order Relating to the '397 and '168 Patents .................................. 11

VI.     MOTION *IN LIMINE* NO. 6:  Evidence And Argument Contrary To The Court's
        Claim Construction And Summary Judgment Rulings .................................................. 12

VII.    MOTION *IN LIMINE* NO. 7:  Undisclosed Fact And Expert Testimony And
        Analysis Pertaining To Non-Infringement ................................................................ 15

VIII.   MOTION *IN LIMINE* NO. 8: Irrelevant Prior Art And Printed Publications ................. 18

        A.      BlackBerry MDS Should Be Limited to a Particular Version of the System,
                and the Shenfield References Should Be Excluded ............................................ 20

        B.      iWeb Should Be Limited to a Particular Version of the System, and Various
                Irrelevant References Should Be Excluded ....................................................... 22

        C.      NexaWeb Should Be Limited to a Particular Version of the System, and
                Various Irrelevant References Should Be Excluded ............................................ 24

IX.     CONCLUSION .......................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*,
    876 F.3d 1350 (Fed. Cir. 2017).................................................................................2

*AVM Techs., LLC v. Intel Corp.*,
    927 F. Supp. 2d 139 (D. Del. 2013)........................................................................4, 5

*AVM Techs., LLC v. Intel Corp.*,
    No. 15-33-RGA, 2017 U.S. Dist. LEXIS 65698 (D. Del. Apr. 29, 2017)............6, 12

*Ballen v. Martin Chevrolet-Buick of Delaware*,
    No. CIV. A. 94-484 MMS, 1997 WL 1045735 (D. Del. Aug. 7, 1997)...................5

*Belden Techs. Inc. v. Superior Essex Commc'ns LP*,
    802 F. Supp. 2d 555 (D. Del. 2011)..........................................................................5

*ContentGuard Holdings, Inc. v. Amazon.com, Inc.*,
    No. 2:13-CV-01112-JRG, 2015 WL 11089489 (E.D. Tex. Aug. 24, 2015)...........11

*Donlin v. Philips Lighting N. Am. Corp.*,
    581 F.3d 73 (3d. Cir. 2009).....................................................................................16

*ePlus, Inc. v. Lawson Software, Inc.*,
    700 F.3d 509 (Fed. Cir. 2012)...............................................................................4, 5

*Genband US LLC v. Metaswitch Networks Corp.*,
    No. 2:14-cv-33-JRG-RSP, 2015 WL 12911530 (E.D. Tex. Sept. 30, 2015)..........12

*HVLPO2, LLC v. Oxygen Frog, LLC*,
    949 F.3d 685 (Fed. Cir. 2020).................................................................................18

*Intellectual Ventures I LLC v. Symantec Corp.*,
    2015 WL 294240 (D. Del. Jan. 21, 2015)................................................................3

*Interdigital Commc'ns Inc. v. Nokia Corp.*,
    No. 13-10-RGA, 2014 WL 12465431 (D. Del. Aug. 28, 2014)..............................11

*Iridescent Networks, Inc. v. AT&T Moility, LLC*,
    6:16-CV-01003-RWS, 2017 WL 8751908 (E.D. Tex. June 15, 2017)...................20

*Lexos Media IP, LLC v. Jos. A. Bank Clothiers, Inc.*,
    No. CV 17-1317-LPS-CJB, 2018 WL 2684104 (D. Del. June 5, 2018).................2

*MobileMedia Ideas, LLC v. Apple Inc.*,
    209 F. Supp. 3d 756 (D. Del. 2016).........................................................................2

*Mobilemedia Ideas LLC v. HTC Corp.*,
  No. 2:10-cv-112-JRG, Dkt. 377 (E.D. Tex. April 24, 2013) ...................................................11

*NTP Marble, Inc. v. AAA Hellenic Marble, Inc.*,
  No. 09-CV-05783, 2012 WL 13014714 (E.D. Pa. May 4, 2012) ...........................................24

*Shopify Inc. v. Express Mobile*,
  2021 WL 4288113 (D. Del. Sept. 21, 2021) ..............................................................12, 13, 14

*SPEX Technologies v. Apricorn, Inc.*,
  2020 WL 1289546 (C.D. Cal. 2020)............................................................................................3

*TMC Fuel Injection System, LLC v. Ford Motor Co.*,
  No. 2:12-cv-4971, Dkt. 70 (E.D. Penn. May 15, 2014).........................................................11

*Wapp Tech v. Seattle SpinCo, Inc.*,
  No. 18-cv-00469, Dkt. 216 (E.D. Tex. July 21, 2020) ..........................................................20

*WNS Holdings, LLC v. United Parcel Serv., Inc.*,
  No. 08-CV-275-BBC, 2009 WL 2136961 (W.D. Wis. July 14, 2009), aff'd,
  368 F. App'x 144 (Fed. Cir. 2010) .......................................................................................18

**Statutes**

35 U.S.C § 287 ...................................................................................................................................2

**Other Authorities**

Fed. R. Evid. 401-403 .......................................................................................... *passim*

Fed. R. Civ. P. Rule 26(a) ..................................................................................................16

Fed. R. Civ. P. Rule Rule 26(e) ........................................................................................16

Fed. R. Evid. Rule 701 ......................................................................................................16

Fed. R. Evid. Rule 702.......................................................................................................16

## INTRODUCTION

Express Mobile filed this case on October 11, 2019 against GoDaddy for infringement of five patents, including the three remaining patents set for trial U.S. Patent Nos. 9, 063, 755, 9,471,287, and 9,928,044 (collectively referred to as Web Component Patents).   The parties proceeded through years of fact and expert discovery, summary judgment and after several changes to the trial date trial is now set for February 27, 2013.  During fact discovery GoDaddy refused to produce certain financial materials and failed to respond to other discovery requests, including any bases for an alleged marking defense.  As set forth in detail below, Express Mobile therefore moves to exclude GoDaddy from presenting any such arguments or evidence at trial.

The Court also ruled on the parties' summary judgment and Daubert motions.  (D.I. 261.) GoDaddy nevertheless intends to introduce evidence that is contrary to the Court's Order, relates to opinions that were excluded by the court and/or is no longer relevant in view of the Court's Order.  Express Mobile therefore also moves to exclude these arguments and evidence.

Express Mobile moves to exclude improper expert testimony from GoDaddy's numerous fact witnesses.  GoDaddy should be precluded from fact witnesses giving undisclosed expert opinions or testimony related to infringement, the asserted claims and claim terms, the Court's claim construction or other such issues.

Finally, GoDaddy attempts to obfuscate and do an end run around the Court's order on the limit of prior art references.  Specifically, GoDaddy does not identify what system it is alleging is actually the prior art it is asserting and compounds this issue by combining and amalgamating dozens of manuals, patents and other materials for numerous prior art references.  GoDaddy should be precluded from asserting dozens of references are one prior art reference and should identify the specific system and reference it intends to assert at trial so the Court, the jury and Express Mobile actually know what is being presented at trial.

## I.    MOTION *IN LIMINE* NO. 1:  MARKING DEFENSE

GoDaddy seeks to limit damages to the date of actual notice of infringement.  The only potential bases for limiting damages to the date of actual notice is if the patentee failed to comply with the marking statue.  35 U.S.C § 287.  Express Mobile specifically asked GoDaddy during discovery to "[d]escribe in detail all factual and legal bases" for any damages limitations under § 287.  (Ex. 1, Resp. to Interr. No. 10.)  GoDaddy did not provide any such bases and entirely failed to disclose any allegedly unmarked embodying products:

> "Subject to its objections, Defendant responds that Plaintiff's damages, if any, will be limited to a time period starting October 11, 2013 pursuant to 35 U.S.C. § 286. Defendant further responds that as Plaintiff has not provided any evidence that it properly marked its products pursuant to § 287(a), any damages are further limited to a time period starting October 11, 2019 with the filing of the complaint. Defendant shall further respond through its expert disclosures pursuant to the Federal Rules and the active Scheduling Order."

(*Id.*)  GoDaddy never supplemented this answer and never "further responded" through expert disclosures or otherwise.  Thus, there has been a complete absence of any disclosure of any alleged unmarked product.

The Federal Circuit requires an alleged infringer to specifically identify the unmarked "patented articles" in order to meet its burden of production to make a marking defense.  *Arctic Cat Inc. v.  Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017); *see also MobileMedia Ideas, LLC v. Apple Inc.*, 209 F. Supp. 3d 756, 763 (D. Del. 2016) (holding that the accused infringer bears the initial burden of production as to whether the patentee sold any products that were not marked when the patentee alleges it did not market a product that practiced the patent).  Absent that showing, the alleged marking of alleged embodying products is not properly at issue.  *See, e.g., Lexos Media IP, LLC v. Jos. A. Bank Clothiers, Inc.*, No. CV 17-1317-LPS-CJB, 2018 WL 2684104, at *2 (D. Del. June 5, 2018), report and recommendation adopted, No. CV 17-1317-LPS-CJB, 2018 WL 4629184 (D. Del. Sept. 27, 2018) (denying motion to

dismiss on the basis of lack of pleading as to allegedly unmarked products; "[I]f certain products are not yet rightly a part of the case (because Defendant had not yet met its burden of production to specifically identify them), it stands to reason that Plaintiff would not have had to plead facts relating to those products.").

Thus, GoDaddy has failed to meet its initial burden of production in identifying particular products, and must be barred from presenting a marking defense at trial. *See Intellectual Ventures I LLC v. Symantec Corp.*, 2015 WL 294240, at *1 (D. Del. Jan. 21, 2015) (excluding marking defense to which defendant failed to respond in interrogatories or provide expert discovery); *SPEX Technologies v. Apricorn, Inc.*, 2020 WL 1289546, *1-*2 (C.D. Cal. 2020) (granting motion in limine seeking to bar the accused infringer from introducing evidence that the patentee failed to mark because the accused infringer failed to timely identify alleged unmarked products during discovery and had not timely supplemented its discovery responses). Permitting GoDaddy to pursue a marking defense at trial would unduly prejudice Express Mobile, and any evidence or argument as to the defense should be excluded.

GoDaddy tacitly admits that it has no marking defense because it has not included any such argument or materials in any of the pretrial disclosures or materials. The Court should therefore preclude GoDaddy from raising any untimely and undisclosed marking defense at trial or argue that damages are limited to the date of actual notice.

## II.    MOTION *IN LIMINE* NO. 2: MATERIALS WITHHELD FROM DISCOVERY

### A.    Historical Pricing of Accused Products and Subscription Plan Data

During discovery Express Mobile requested that GoDaddy produce information relating to the historical prices it charged for the accused infringing products. (*E.g.*, Ex. 3, RFP Nos. 15, 26; Ex. 10, RFP No. 76.) Express Mobile also requested that GoDaddy produce information relating to the number of subscribers in free trials and other subscription plans. (*E.g.*, Ex. 10, RFP No. 77.)

GoDaddy did not produce either.  In June 2021, GoDaddy witness, Justin Tsai, confirmed that historical pricing and subscription counts by plan existed during his deposition.  Following the deposition, Express Mobile again requested that GoDaddy immediately produce that information.  (Ex. 4, 6/16/21 Johnson email.)  In July 2021, Express Mobile requested the information be produced again.  (Ex. 5, 7/16/21 Johnson email.)  GoDaddy never responded to those communications and never produced the requested information.

Because GoDaddy intentionally withheld or failed to provide this historical pricing and subscription counts by plan information, Express Mobile's expert, Mr. Bratic relied on GoDaddy's historical pricing information available on the Wayback Machine.  (Ex. 2, Exhibit 12 to Bratic Reply.)  GoDaddy should not be permitted now to challenge the historical pricing information relied upon by Mr. Bratic in view of GoDaddy's refusal or failure to produce any such information during discovery, especially in light of Express Mobile's repeated requests for this information.  Similarly, because GoDaddy intentionally withheld or failed to provide subscription counts by plan, it should not be now permitted to challenge the number of free trial subscribers or otherwise challenge the number of subscribers in particular plans.

Such untimely challenges at trial would be extremely prejudicial to Express Mobile.[1]  *See, e.g., AVM Techs., LLC v. Intel Corp.*, 927 F. Supp. 2d 139, 147 (D. Del. 2013) (excluding live testimony on theory previously undisclosed as improper, untimely, and prejudicial); *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 523 (Fed. Cir. 2012) (affirming exclusion of previously

---

[1] GoDaddy's expert, Mr. Perry, purports to rely on historical pricing information for 2013 and 2014.  (Ex. 6, Perry § 3.5.5.2.)  That information is incomplete and fails to relate to much less cover the damages period.  And, crucially, the information Mr. Perry presents is wholly erroneous. It relates to unaccused hosting products not the accused website building products.  (Ex. 7, Bratic Reply ¶ 72.)  That erroneous information must also be excluded at trial because it is entirely irrelevant and would only confuse the jury with pricing relating to products and services that are not at issue in the case.

4

undisclosed evidence as prejudicial). Express Mobile requests that any testimony, opinion, evidence, or argument regarding the historical pricing that in any way criticizes or contradicts that reflected in Exhibit 12 to Mr. Bratic's reply be excluded from trial. *Belden Techs. Inc. v. Superior Essex Commc'ns LP,* 802 F. Supp. 2d 555, 566 (D. Del. 2011) (granting a retrial at defendant's expense because "evidence not vetted during discovery cannot be used at trial."); *Ballen v. Martin Chevrolet-Buick of Delaware,* No. CIV. A. 94-484 MMS, 1997 WL 1045735, at *3 (D. Del. Aug. 7, 1997) ("Evidence sought under a discovery request and not produced may be excluded at trial."). Express Mobile also requests that GoDaddy be precluded from making any arguments or presenting any evidence regarding the number of free trials or subscription count information because it refused to produce any such information during discovery in this case. *Id.*

### B. Extent of Use

Finally, GoDaddy should be excluded from presenting evidence or argument at trial regarding any alleged lack of the extent of use of the patented inventions. Express Mobile requested such information during discovery. (*E.g.*, Ex. 10, RFP Nos. 79, 81.) GoDaddy did not produce that information, and its experts did not disclose any expert opinion this topic. (Ex. 19, GoDaddy 30(b)(6) Tr. at 114-116 (confirming that usage data exists but had not been produced).)

Thus, any undisclosed evidence or argument about extent of use of the patented features should be excluded from trial because their introduction would be prejudicial. *See, e.g., AVM Techs., LLC*, 927 F. Supp. 2d at 147; *ePlus, Inc.*, 700 F.3d at 523; *Belden Techs. Inc.,* 802 F. Supp. 2d at 566; *Ballen*, 1997 WL 1045735, at *3.

## III. MOTION *IN LIMINE* NO. 3: IRRELEVANT FINANCIAL EVIDENCE AND ARGUMENT

Express Mobile moves to exclude financial information that GoDaddy identified on its exhibit list that is not relevant to any issue to be tried in this case, but rather relates to issues already

excluded by the Court.  The prejudicial effects, including bias against Express Mobile and confusion to the jury, associated with this financial information far outweighs the minimal (if not zero) probative value.  They should be excluded under Rule 403.  *See, e.g., AVM Techs., LLC v. Intel Corp.*, No. 15-33-RGA, 2017 U.S. Dist. LEXIS 65698, at *8-9 (D. Del. Apr. 29, 2017) (excluding evidence where any "marginal relevance" "is more than substantially outweighed by the danger of unfair prejudice . . . and of confusing the issues").

A.    **Exhibits Previously Excluded**

In its *Daubert* ruling, the Court excluded GoDaddy's damages expert opinion relating to multiple financial-related documents.  Specifically, the Court excluded GoDaddy's expert's opinions relating to settlement agreements and a non-existent license with CY Digital.  D.I. 261 at 50-51 (CY Digital), 51-52 (settlement agreements) and 50 (Rempell's bankruptcy).  Despite the Court's ruling, GoDaddy includes numerous documents relating to those excluded opinions on its exhibit list.  Express Mobile seeks exclusion of those exhibits (and argument or testimony relating thereto) from being introduced at trial.  Specifically, Express Mobile seeks exclusion of the following exhibits[2] or testimony, including (1) DTX134, DTX217, DTX218, DTX604, DTX620-687 (relating to settlement agreements); (2) DTX612, DTX613, DTX688, DTX689, DTX726-731 (relating to CY Digital); and (3) evidence or arguments relating to the Rempell bankruptcy.

The above exhibits and argument and/or testimony relating thereto should be excluded from trial consistent with the Court's *Daubert* ruling.  (*See* Ex. 18, Shopify PTC Hearing Tr. at 61 (excluding license agreements because "[t]hey're not very good evidence because they're settlement agreements, and I they're very prejudicial, unfairly prejudicial, so that the probative value, which is not great at all, is substantially outweighed by the risk of unfair prejudice").)

---

[2] DTX exhibits cited herein refer to Defendant's trial exhibits, a list of which will be filed concurrently as an attachment to the [Proposed] Joint Pretrial Order.

### B.    Alleged Three-Tiered Licensing Program

GoDaddy should be excluded from raising any evidence or argument pertaining to an alleged tiered licensing program at trial, including at least DTX706 (relating to ▮▮▮▮ Any such evidence or argument is irrelevant and prejudicial for at least two reasons.  First, the email relating to the alleged licensing program relates to efforts to settle litigation involving only the Web Design Patents which are not at issue for this trial and did ultimately result in settlement of litigation.[3] The corresponding expert opinion relating to the settlement agreements that resulted from those communications (as well as the rest of GoDaddy's expert opinion relating to settlement agreements), have already been excluded by the Court.  (*See* D.I. 261 at 51-52.)  Because the settlement agreements have been excluded, the correspondence relating to any such settlement agreements is irrelevant, confusing to the jury, prejudicial, and should also be excluded for this reason alone.

Second, the lack of probative value is apparent in view of the fact that GoDaddy's damages expert, Mr. Perry makes no mention of a licensing program and does not cite DTX706 or any other alleged licensing program documents in his expert report.  To the extent that GoDaddy argues that Mr. Perry disclosed and opined on the alleged three-tiered program, that argument is entirely false as Mr. Perry did not rely on a licensing program or disclose or discuss such a program or DTX706.[4] Thus, information relating to an alleged three-tiered licensing program, including DTX706, should be excluded from trial under Rule 403.

### C.    Express Mobile Tax Returns and Related Financial Information

---

[3] DTX706 did in fact result in a settlement agreement resolving litigation.  (*See* DTX637.)

[4] In opposing Express Mobile's *Daubert* motion seeking exclusion of opinion relating to gross revenues of other companies, GoDaddy argued that "Mr. Perry merely uses each company's gross revenues within the framework of XMO's own licensing program" and cited communications with ▮▮▮▮ D.I. 189 at 22 (citing DTX706).    Mr. Perry's opinions, however, do not cite to DTX706 or mention ▮▮▮▮ or a tiered licensing program at all.

GoDaddy should be precluded from relying on Express Mobile's tax returns (*e.g.*, DTX705) and other financial information, which is not relevant to any issue at trial and only serves to prejudice Express Mobile and mislead the jury.  Specifically, GoDaddy included Express Mobile's 2013 tax returns on its exhibit list (DTX705), and its expert included opinions regarding Express Mobile's finances and alleged "financial distress" (Ex. 6, Perry at 12-13, 54.)  Such information is not relevant and should be excluded under Rule 403 for at least three reasons.

First, 2013 is two years before the Web Component Patents at issue at trial ever existed.  Accordingly, such information is irrelevant and should be excluded.  (*See* D.I. 261 at 48 (excluding expert opinion relating to patent auction as to the Web Component Patents because "those patents had not yet issued at the time of the patent auction.").)

Second, Express Mobile's financial status is not relevant to any of the infringement, invalidity, or damages issues set for trial.  Tellingly, GoDaddy's damages expert does not rely on this information other than to argue that Express Mobile's alleged "financial distress" in 2013 would support a lump sum form of a royalty because it would "enable the company to raise a substantial amount of cash quickly."  (Ex. 6, Perry at 13.)  Even if that were true, the probative value of Express Mobile's financial status two years before the Web Component Patents ever existed is substantially outweighed by prejudice.  In particular, the introduction of such financial information only serves to try to disparage or paint Express Mobile in a bad light and skew GoDaddy's alleged damages number as being significant and large in comparison to Express Mobile's finances and income.

Lastly, Express Mobile's tax returns should be precluded for the same reasons the Court granted Express Mobile's *Daubert* motion relating to bankruptcy filing evidence.  (*See* D.I. 261 at 50.)  There, the Court agreed that "the bankruptcy evidence is not relevant because the value of

the Express Mobile stock [reflected therein] did not include the value of the patents." (*Id.*) Express Mobile's tax returns similarly do not bear on the value of the patents.

Thus, Express Mobile tax return and related financial information, including DTX705, should be excluded from trial under Rule 403.

### D.    2011 Proposal and 2012 █████ Sale of Web Design Patents to Express Mobile

Express Mobile requests that information relating to the sale of other patents (Web Design Patents), that took place years before the Web Component Patents at issue at trial even issued, be excluded from the upcoming trial. The sale of other patents years before the hypothetical negotiation has minimal, if any, probative value and any such minimally relevant information is greatly outweighed by the likely confusion and prejudice that would be caused by allowing such evidence at trial. Exclusion under Rule 403 is therefore necessary.

In 2012 ████████████████████████████████████████████ ████████████████ (Ex. 6, Perry at 13-15.) Prior to that, in August 2011, Mr. Rempell was approached by a patent brokerage interested in selling Express Mobile's patents, but no such auction, brokerage or sale actually occurred. (Ex. 6, Perry at 10-11.) The earliest of the Web Component Patents at issue in this trial did not issue until June 2015. Mr. Perry discusses the ████ issues in his expert report but did not rely on them in calculating a reasonable royalty for any patent, much less the Web Component Patents. It appears that GoDaddy may nevertheless try to admit the information relating to the ████ patent sale despite the fact that they are not relied on by its damages expert in calculating damages in this case, as GoDaddy included exhibits relating to the ████ patent sale on its exhibit list. (DTX695, DTX704, DTX737, DTX758.) Such information is irrelevant and will only serve to mislead and confuse the jury, as evidence relating to other patents not at issue at trial years before the asserted patents ever issued or the hypothetical negotiation occurred has nothing to do with the reasonable royalty for the Web Component patents.

Thus, the ▮▮▮▮ patent sale information, including DTX695, DTX704, DTX737, and DTX758, should be excluded from trial under Rule 403.

### E.    Discussions With RPX Relating to the Web Design Patents

GoDaddy includes documents relating to RPX on its exhibit list (DTX603, DTX605-607, DTX782-785) and its expert opines regarding RPX's 2013 invitation to Express Mobile to make an offer to sell the Web Design patents and other cross licenses (Ex. 6, Perry at § 3.3.2.5.)   As the Court previously summarized, "RPX invited Express Mobile to make an offer at $3.5 million for the Web Design Patents and cross-licenses."  (D.I. 261 at 48.)  The Court declined to exclude Mr. Perry's testimony on the RPX invitation to make an offer at the *Daubert* stage but acknowledged that "[a]t trial, Express Mobile may attempt to show that the RPX Offer should not be used to calculate a hypothetical negotiation agreement between itself and GoDaddy." (*Id*. at 49.)

At trial, which relates only to the Web Component Patents, there is no relevance of the RPX invitation to make an offer.  First, the discussions with RPX relate to the Web Design patents, which are not at issue at trial and not the Web Component Patents.  Second, those discussions occurred in 2013, two years prior to the issuance of the '755 patent and two years before the hypothetical negotiation date for the Web Component Patents.  Thus, the prejudicial effects of invitation to make an offer outweigh any marginal (if not non-existent) relevance.  Thus, the 2013 RPX invitation to make an offer, including DTX782-785, should be excluded from trial under Rule 403.  (*See* D.I. 261 at 48 (excluding expert opinion relating to patent auction as to the Web Component Patents because "those patents had not yet issued at the time of the patent auction.").)

## IV.    MOTION *IN LIMINE* NO. 4:  DEROGATORY STATEMENTS ABOUT EXPRESS MOBILE

The Court should exclude Defendants from using any pejorative or derogatory references, evidence, testimony (including expert testimony), arguments regarding, or inquiries attempting to

elicit testimony regarding, Express Mobile's current status as a non-practicing entity. Such terms have no relevance to any claim or defense in this lawsuit. Fed. R. Evid. 402. Moreover, the probative value—if any—of such terms is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and/or the risk of misleading the jury into resolving this case based on factors other than the evidence and the law. Fed. R. Evd. 403. This Court and others have repeatedly excluded the use of such terms at trial.[5] (*See, e.g., See* Ex. 18, Shopify PTC Hearing Tr. at 66-69 (defendant can mention that Express Mobile does not sell a product, but should not be used in a derogatory fashion); *Interdigital Commc'ns Inc. v. Nokia Corp.*, No. 13-10-RGA, 2014 WL 12465431, at *1 (D. Del. Aug. 28, 2014) (prohibiting use of the terms "troll, non-practicing entity (NPE), patent assertion entity, or extortionist"); *ContentGuard Holdings, Inc. v. Amazon.com, Inc.*, No. 2:13-CV-01112-JRG, 2015 WL 11089489, at *2 (E.D. Tex. Aug. 24, 2015); Ex. 25, *Mobilemedia Ideas LLC v. HTC Corp.*, No. 2:10-cv-112-JRG (Dkt. 377) at 4 (E.D. Tex. April 24, 2013); Ex. 26, *TMC Fuel Injection System, LLC v. Ford Motor Co.*, No. 2:12-cv-4971 (Dkt. 70 at 1) (E.D. Penn. May 15, 2014).)

## V.    MOTION *IN LIMINE* NO. 5:  ARGUMENTS OR EVIDENCE REGARDING THE COURT'S SUMMARY JUDGMENT ORDER RELATING TO THE '397 AND '168 PATENTS

Express Mobile moves to exclude references, testimony, evidence, and argument regarding the Court's grant of summary judgment of non-infringement of the '397 and '168 patents.  (D.I. 261.)  The instant trial is proceeding on the '755, '287, and '044 patents.  Thus, GoDaddy should be prohibited from offering testimony, evidence, and argument regarding non-infringement of the

---

[5] For example, use of any of the following or similar terms should be excluded: "patent troll," "pirate," "bounty hunter, "privateer," "bandit," "paper patent," "submarine patent," "stick up," "hold up," "shakedown," "playing the lawsuit lottery," "patent assertion entity," "a company that doesn't make anything," or "a company that doesn't sell anything."

'397 and '168 patents.  Any such references, testimony, evidence, and argument are not relevant to the issues to be decided at trial and any marginal relevance is strongly outweighed by prejudice to Express Mobile, and severely risks confusion of the jury.  (*See e.g.,* Ex. 18, Shopify PTC Hearing Tr. at 57-58 ("there's not going to be any discussion of noninfringement of the '397 and '168 patents"); Fed. R. Evid. 401-403*; AVM Techs., LLC*, 2017 U.S. Dist. LEXIS 65698, at *8-9 (excluding evidence where any "marginal relevance" "is more than substantially outweighed by the danger of unfair prejudice . . . and of confusing the issues"); *Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-cv-33-JRG-RSP, 2015 WL 12911530, at *1 (E.D. Tex. Sept. 30, 2015) (excluding reference to any claims dismissed voluntarily or by the Court).)

## VI.    MOTION *IN LIMINE* NO. 6:  EVIDENCE AND ARGUMENT CONTRARY TO THE COURT'S CLAIM CONSTRUCTION AND SUMMARY JUDGMENT RULINGS

Both this Court and the court in *Shopify* made several legal rulings pertaining to claim construction that impose limitations on the evidence and arguments that GoDaddy should be permitted to make at trial.  GoDaddy should therefore be precluded from offering expert testimony, arguments and other evidence that is contrary to the Court's legal rulings.  Such evidence, if permitted, would be irrelevant, and its probative value would surely be outweighed by its prejudicial effects.

### A.    Evidence and Argument Contrary to the Court's Construction of Player and Device-Dependent Code

The Court has construed "Player" as "device-specific code which contains instructions of a device and which is separate from the Application" (D.I. 261 at 9), and "device-dependent code" has been construed as "code that is specific to the operating system, programming language, or platform of a device." *Express Mobile*, 2021 WL 2209868, at *5.  These are the same constructions of these two terms that were applied in the *Shopify* case.

GoDaddy seeks to rewrite the construction of a "Player" that is a "device-dependent code" to be narrow and contrary to the Court's construction.  In particular, GoDaddy seeks to limit the construction of a "Player" such that each player must be 100% designed and provided only for one particular device.  For example, GoDaddy asserts that there must be a separate Windows player, a separate Android player, a separate Apple player, and so forth, even though the Court's claim construction is not limited to such implementations of device-specific players.  GoDaddy asserts this improper construction in an effort to eliminate Players with "conditionally branched" JavaScript code, which account for numerous different device types, from the Court's construction.

Both the *Shopify* Court and this Court have rejected GoDaddy's proposed construction. The Court in *Shopify* noted that Players containing conditionally-branched code were within the scope of the operative construction and that "Shopify's argument that device-dependent code must be developed and provided to specific devices . . . fails," and that such a requirement "is not a claim limitation." *Shopify Inc. v. Express Mobile*, 2021 WL 4288113, at *16-17 (D. Del. Sept. 21, 2021).  So too here, the Court has denied summary judgment and "adopt[ed] the same reasoning as in [the *Shopify*] case."  Specifically, the Court found that Express Mobile provided evidence of files that contain conditional branch code as player code and therefore denied summary judgment of non-infringement.  (D.I. 261 at 28.)

Despite the above, GoDaddy's expert, Mr. Kent, has advanced opinions much like the argument that was rejected in *Shopify*.  Mr. Kent intends to testify contrary to the Court's claim construction and summary judgment rulings that that "the Player is *device-dependent* (***i.e., only operable on a single type of device***)."  (Ex. 8, Kent Rebuttal ¶ 603 (bold-italic emphasis added).) Specifically, Mr. Kent argues that device-specific code must be "100% specific to the particular machine," and that "different device-dependent Players" are created for each device.  (*Id.* ¶¶ 600-

13

601.)  Mr. Kent's opinions of "device-specific code" contradict the *Shopify* Court and this Court's claim construction and summary judgment rulings, as neither court has ruled that device-dependent code is "only operable on a single type of device."  *See Shopify*, 2020 WL 3432531, at *7 (claim construction ruling rejecting argument that Player must be an executable file for a particular device); *Shopify*, 2021 WL 4288113, at *17 (holding during summary judgment that "Shopify's argument that device-dependent code must be developed and provided to specific devices . . . fails.");  D.I. 261 at 9, 27-28 (adopting same construction of Player and rejecting similar arguments on summary judgment in GoDaddy).  Further, both courts held that device-specific code can be conditionally branched, device-dependent Player code that is operable (but executes differently) across different devices. *Shopify*, 2021 WL 4288113, at *17 ("A reasonable jury could credit Dr. Almeroth and find that conditional logic is 'device-dependent code.'"); D.I. 261 at 28 (adopting "same reasoning" as *Shopify* and denying summary judgment based on "files that contain conditional branching").  All of these opinions (and any similar testimony) should be excluded from this case as irrelevant and contrary to this Court's claim constructions and previous legal rulings.

> **B.    Evidence and Argument Contrary to the Court's Ruling That the Asserted Claims Are Directed to the Actions of the Program Provider**

During summary judgment, GoDaddy asserted that the claims of the patents encompassed user conduct (*e.g.*, conduct by GoDaddy's customers) and therefore could not be directly infringed. (*See* D.I. 163 at 24-26.)  However, the Court rejected this argument, noting that "[t]he court disagrees that the claims encompass user conduct," and that the asserted claims "focus on the actions of the program provider, not the customer." (D.I. 261 at 31.)  This legal ruling is consistent with Express Mobile's position that the asserted claims are drafted from the perspective of the

server, and that all the steps of the claims are performed by servers, including those steps that might process user inputs.  (D.I. 191 at 23-27.)

Given this clear legal ruling, GoDaddy and its experts should be foreclosed from presenting arguments and testimony that GoDaddy does not infringe based on alleged "user" or "customer" inputs that are required to set-up or use GoDaddy's Website Builder or Managed WordPress platforms.  Because the claims do not require user conduct as a matter of law there is no divided infringement issue, any such testimony is necessarily irrelevant and of no probative value. Nonetheless, Mr. Kent again has testimony to this effect in his report. (*See, e.g.*, Ex. 8, Kent Rebuttal ¶ 306 (asserting that ██████████████████████████████ a need to consider ██████████████████████████████████████████).) Mr. Kent should be precluded from testifying that the claim steps involve or require "user" or "customer" activity, as such assertions would be misleading, incorrect as a matter of law, and unduly prejudicial.

## VII.     MOTION *IN LIMINE* NO. 7:  UNDISCLOSED FACT AND EXPERT TESTIMONY AND ANALYSIS PERTAINING TO NON-INFRINGEMENT

GoDaddy apparently intends to call numerous company technical fact witnesses to testify about the accused products.  GoDaddy's current witness list includes Franklin Jarrett, Adam Knapp, Adam Shankel, and Aaron Silvas, who all fall into the technical fact witness category. GoDaddy should not be permitted to advance undisclosed fact or expert opinions through these witnesses, including opinions relating to technical analyses of the accused products and their source code.  Other than declarations submitted from Messrs. Silvas and Jarrett during summary judgment that pertained the '397 and '168 patent infringement theories, GoDaddy disclosed no detail about the facts or data underlying any opinions that the four technical fact witnesses listed above will provide at trial relating to the '755, '287, and '044 patents.  GoDaddy did not submit

any declarations from these four that bear on the '755, '287, and '044 patents, let alone provide any expert disclosures from these witnesses. These witnesses, moreover, had minimal conversation with Mr. Peter Kent (GoDaddy's non-infringement expert) that have been disclosed as the basis for Mr. Kent's opinions.  GoDaddy should not be permitted to gapfill holes in Mr. Kent's non-infringement analysis, and to supplement Mr. Kent's expert opinions with new arguments or testimony that was not properly disclosed to Express Mobile.  The purpose of subsection (c) of Rule 701 is "to 'eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing.'" *Donlin v. Philips Lighting N. Am. Corp*., 581 F.3d 73, 80 (3d. Cir. 2009) (quoting advisory committee notes).

This Court has already expressed skepticism about improper disclosure of testimony or evidence from GoDaddy's fact witnesses.  When GoDaddy submitted the declarations of Messrs. Silvas and Jarrett pertaining to the '397 and '168 patents during summary judgment, this Court already held that they set forth new facts that were not disclosed during fact or expert discovery, thus failing to comply with the deadlines in Rule 26(a), Rule 26(e), and the Court's scheduling order.  (D.I. 261 at 16.)  This Court so held because Express Mobile propounded an interrogatory that requested the detailed "factual and legal bases" for GoDaddy's assertion of non-infringement (*see* Ex. 11, Express Mobile Interrogatory No. 8), and the interrogatory responses from GoDaddy did little more than make an assertion that the relevant non-infringement facts would be disclosed during expert discovery.  GoDaddy's interrogatory responses did not identify any of Messrs. Jarrett, Knapp, Shankel, or Silvas by name in connection with non-infringement.  (Ex. 11, GD Supplemental Rog Responses at 6-7 (response to interrogatory number 8).) Nor did Mr. Kent's non-infringement expert disclosure meaningfully rely on any of these individuals. There is no record of Mr. Kent relying on any interviews of Messrs. Knapp or Shankel.  Mr. Kent relied on

16

short interviews of Messrs. Jarrett and Silvas solely in reference to single footnotes supporting two sentences out of his 309-page rebuttal report.  (*See* Ex. 8, Kent Rebuttal at footnotes 20, 52).) These interviews lasted no more than 15 minutes apiece, about which Mr. Kent did not take notes and could recall few, if any, details.  (Ex. 12, Kent Dep. at 26:4-29:4, 32:7-12, 33:3-23.)

Despite the relatively limited role that Messrs. Jarrett, Silvas, Knapp, and Shankel played in GoDaddy's discovery disclosures, these individuals should not be permitted to give expert or other opinions during trial such that they render new expert opinions and arguments.  Express Mobile's concern is justified, including because GoDaddy attempted such a maneuver before. Indeed, with respect to the previously-submitted Jarrett and Silvas declarations, this Court expressed concern that the declarations "***provide[d] new facts and arguments derived from the evidence that cannot fairly be said to be restatements of that previously disclosed evidence***." (D.I. 261 at 16-17 (emphasis added).)  Those previous declarations contained expert testimony, repeatedly invoked Dr. Almeroth and responded to his opinions, and contained discussions of claim language that attempted to apply the Court's claim constructions of the '397 and '168 patents to the alleged "factual" analysis recited in the declaration.  (D.I. 183 at 12-14 (citing D.I. 159, Silvas Declaration, ¶¶ 11, 14; D.I. 160, Jarrett Declaration, ¶¶ 23-24, which discussed whether runtime files are "created" during runtime or "read" from a database).)  Given this, Express Mobile has good reason to believe that GoDaddy will seek similar expert testimony from its technical witnesses at trial with respect to the '755, '287, and '044 patents.  Specifically, Express Mobile believes that GoDaddy may seek to elicit testimony from these fact witnesses to opine on whether GoDaddy's Website Builder or Managed WordPress products include a "registry," "symbolic names," a Player of "device-dependent code," or an Application and Player that are "separate," among other things.  Express Mobile further believes that GoDaddy's witnesses may opine on

matters outside of their personal knowledge—for example, they may attempt to discuss the test websites created by Dr. Almeroth or Mr. Kent as part of their analyses of infringement.  (*See, e.g.*, DTX491 & DTX492 (references to ngray test websites); DTX529, DTX532, and DTX537 (references to screenshots of Kent's test websites).)  And they may attempt to render improper expert opinions on source code within those websites or within source code files.

Improper and undisclosed expert testimony from GoDaddy's fact witnesses should therefore be excluded.  *HVLPO2, LLC v. Oxygen Frog, LLC*, 949 F.3d 685, 688–89 (Fed. Cir. 2020) (reversing jury verdict for allowing testimony from alleged lay witness about patent issues that was never properly disclosed as expert testimony); *WNS Holdings, LLC v. United Parcel Serv., Inc.*, No. 08-CV-275-BBC, 2009 WL 2136961, at *2–3 (W.D. Wis. July 14, 2009), aff'd, 368 F. App'x 144 (Fed. Cir. 2010) (finding that alleged fact declaration regarding the accused product and how it operates is expert testimony).  In *HVLPO2*, the Federal Circuit found that "it is an abuse of discretion to permit a witness to testify as an expert on the issues of noninfringement or invalidity unless that witness is qualified as an expert in the pertinent art." 949 F.3d at 689 (quoting *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1361-61 (Fed. Cir. 2008).  The "prohibition of unqualified witness testimony extends to the ultimate conclusions of infringement and validity *as well as to the underlying technical questions*."  *HVLPO2*, 949 F.3d at 689 (emphasis added).  Therefore, none of Messrs. Jarrett, Knapp, Shankel, or Silvas should be permitted to provide such testimony.[6]

## VIII.   MOTION *IN LIMINE* NO. 8: IRRELEVANT PRIOR ART AND PRINTED PUBLICATIONS

---

[6] In the context of the prior motion to strike, the Court did not reach Express Mobile's argument that the previous declarations from Messrs. Jarrett and Silvas included expert testimony.  (D.I 261 at 18 n.3.)

Express Mobile moves to exclude irrelevant prior art and printed publications that are untethered to the remaining invalidity grounds in the case. Specifically, Express Mobile moves to exclude prior art references that are not sufficiently related or tied to a particular version of the BlackBerry MDS Studio, iWeb, and NexaWeb prior art systems that remain in the case.

On November 5, 2021, after the Court issued its summary judgment decision, this Court entered an order regarding case narrowing. (D.I. 153 at 1.) In that order, GoDaddy was required, by November 10, 2021, to "reduce[] the number of prior art references to no more than 8 references per Asserted Patent, [and] 20 prior art references total across all the Asserted Patents." (*Id.*) GoDaddy identified three system art references as invalidity references against the '755, '287, and '044 patents—BlackBerry MDS, iWeb, and NexaWeb. (Ex. 13, GoDaddy Nov. 10, 2021 Prior Art Election at 2.) GoDaddy's pleading asserted that "Dr. Greenspun's expert reports . . . provide the definitions for each of the prior art 'references' listed" in its pleadings. *(Id.* at 1.)

Dr. Greenspun purports to define the scope of his BlackBerry MDS, iWeb, and NexaWeb prior art "references" in the claim charts that are attached to his report. With respect to these three system art references, however, the "definitions" of the prior art references provided by Dr. Greenspun are excessively overbroad, do not hold true to the 20 prior-art-reference limit provided by the Court, and are not tied to a particular identified version of each prior art system. Instead, Dr. Greenspun provides claim charts for the three alleged system art "references" that amalgamate dozens of product manuals, third party declarants, and patents and printed publications in an effort to bootstrap dozens of disparate documents into each supposed "reference." Other than conclusory assertions, Dr. Greenspun's expert report does not provide analysis demonstrating that the documents cited in each claim chart are tied to each prior art system, let alone a single ***version*** of the prior art system. This is deficient as a matter of law, and requires exclusion of numerous

irrelevant references that are cited in the charts. *See* Ex. 27, *Wapp Tech v. Seattle SpinCo, Inc.*, No. 18-cv-00469, Dkt. 216, at 3 (E.D. Tex. July 21, 2020 ("All Defendants do here is make a conclusory argument that each of the cited documents in the chart relates directly to the combination . . . . That is insufficient."); *Iridescent Networks, Inc. v. AT&T Moility, LLC*, 6:16-CV-01003-RWS, 2017 WL 8751908, at *3 (E.D. Tex. June 15, 2017) ("Defendants have not made a sufficient showing that this is a single author or single prior art instrumentality.").

### A.    BlackBerry MDS Should Be Limited to a Particular Version of the System, and the Shenfield References Should Be Excluded

GoDaddy's disclosed "BlackBerry MDS," but failed to identify a particular version of that system, even though evidence of record demonstrates that there were multiple versions of the BlackBerry MDS Studio product. (*See*, *e.g.*, Ex. 14, Bateman Dep. at 24 (referencing versions 1.0, 1.1, and 2.0), 32 (discussing version 4.1), 34 (referring to two versions of MDS Studio, versions 4.0 and 4.1), 37 (referring to versions 3.6, 4.0, and 4.1).)  GoDaddy should be required to identify the particular version of the BlackBerry MDS Studio product that it is accusing.

Dr. Greenspun's "BlackBerry MDS" chart simply aggregates numerous prior art references that are not tethered to a single version of the alleged prior art system.  As an example, it includes twelve "Shenfield" patents and patent publications that are not BlackBerry MDS product manuals or documents. (Ex. 15, Greenspun Report Exhibit M at 1-2.)[7]  Where the actual BlackBerry MDS Studio documentation is lacking, Dr. Greenspun uses "Shenfield" to gapfill holes in the invalidity ground.  *See generally id*.  However, various Shenfield references were originally identified as discrete pieces of prior art in GoDaddy's initial invalidity contentions, and were separately charted by GoDaddy.  (Ex. 16, GoDaddy Oct. 13, 2020 Initial Invalidity Contentions at 32 (showing

---

[7] The Shenfield references on GoDaddy's trial exhibit list are labeled DTX707, DTX709-710, DTX713, DTX715-722, and DTX759.

"BlackBerry MDS Studio" and Shenfield I-IV references as distinct anticipation and obviousness grounds); Ex. 17, Original Shenfield Charts.)  Having now dropped the Shenfield references from its invalidity grounds, GoDaddy and its expert seek to use the guise of "system art" to improperly bootstrap these references back into the case through its expert, Dr. Greenspun.  In the Shopify case, Shopify tried to do the same thing GoDaddy attempts here, but the Court precluded Shopify from introducing any Shenfield references in its BlackBerry MDS Studio prior art ground because Shopify dropped the Shenfield references. The same should apply here and GoDaddy should be precluded from making an end run around the disclosure and prior art limit requirements.  (*See* Ex. 18, Shopify PTC Hearing Tr. at 87 ("I'm sympathetic to Express Mobile here.  You narrowed the case by withdrawing them.  I don't think [the Shenfield references] come back in for some other purpose.").)

Moreover, GoDaddy and its expert have done nothing to explain how the Shenfield references accurately describe BlackBerry MDS Studio, let alone a particular version of BlackBerry MDS studio.  Mr. Bateman, a declarant relied on by Dr. Greenspun, was not entirely sure what versions of the BlackBerry MDS product he even worked on, and he was not asked any questions by GoDaddy's counsel about the Shenfield references.  (Ex. 14, Bateman Dep. at 53, 86-87, 90, 94.)  Dr. Greenspun's chart simply states, in a conclusory fashion that, "Documents evidencing BlackBerry MDS Studio include . . . the following references."  (Ex. 15, Greenspun Exhibit M at 1.)  Dr. Almeroth raised this issue, explaining that "Dr. Greenspun cites to various patent applications and publications naming Michael Shenfield," but that "Dr. Greenspun never bothered to establish that these patent applications and publications are describing the BlackBerry Studio software at issue." (Ex. 20, Almeroth Rebuttal ¶ 1141.)  The sole paragraph in Dr. Greenspun's reply that mentions Shenfield did not cure this deficiency, as it simply stated that

"Shenfield pertains to hosting application components in a Web service registry," and that the references were "assigned to Research in Motion." (Ex. 9, Greenspun Reply ¶ 761.) This conclusory response provided no evidence that there is a link between the Shenfield references and the accused ***BlackBerry MDS Studio system***.

For these reasons, GoDaddy should identify the actual version of BlackBerry MDS that it is accusing, the Shenfield references should be excluded, and GoDaddy must be limited to the printed publications, screenshots, and videos that actually describe the version of the BlackBerry MDS system being accused.

**B.    iWeb Should Be Limited to a Particular Version of the System, and Various Irrelevant References Should Be Excluded**

GoDaddy also generically identified "iWeb" on its prior art election, but Dr. Greenspun's chart and deposition once again confirms that there are multiple versions of the iWeb system. Dr. Greenspun testified that there was an iWeb '06, '08, and possibly even an '09 version. (Ex. 21, Greenspun Dep. at 109.) Dr. Greenspun's chart for iWeb, Exhibit N, recites numerous references that, on their face, illustrate that GoDaddy is attempting to amalgamate multiple versions of the system art ground into his chart, including iWeb '06 and '08. (*See* Ex. 22, Greenspun Exhibit N (listing references that appear to describe both iWeb '06 and '08).) Moreover, GoDaddy's exhibit list includes product manuals, installation guides, and similar documents pertaining to both iWeb '06 and '08. (*See*, *e.g.*, DTX1-10, DTX206 and DTX208 (exhibits referencing both iWeb '06 and '08).) As with BlackBerry MDS, GoDaddy must identify the particular version of the iWeb system on which it relies, and it should be precluded from adducing evidence pertaining to multiple different versions.

As with the Shenfield reference in the BlackBerry MDS Studio ground, the iWeb ground includes references to irrelevant patents and printed publications that have not been sufficiently

tied to the iWeb *system*, let alone to a particular accused version of that system.  As an example, Dr. Greenspun's "iWeb" chart lists a Rudolph patent (DTX227) and Weeldreyer patent (DTX207) that are not product manuals or iWeb documents.  Rudolph, much like Shenfield, had been separately asserted by GoDaddy as an invalidity reference early in the case, had been included in separate invalidity charts, and was not included in GoDaddy's November 10, 2021 prior art election.  (Ex. 16, GoDaddy Oct. 13, 2020 Initial Invalidity Contentions at 32 (initial invalidity contentions showing Rudolph); Ex. 22, Greenspun Exhibit N at 4, 5, 8, 12, 14, 16, 21, 25, 29, 30, 32, 33, 35, 37, 38, 40, 41, 43, 46, 48-50, 52, 55, 57, 61, 63, 65, 69, 73, 77, 80, 82, 83, 86, 89, 91 (Greenspun report charting Rudolph throughout alleged "iWeb" ground).)

Nonetheless, when iWeb was added to the case, GoDaddy and Dr. Greenspun amalgamated "Rudolph" with alleged supporting documents of the iWeb system.  But Dr. Greenspun did nothing to explain how Rudolph describes the iWeb system or identify the version to which it pertains. As with BlackBerry, Dr. Greenspun merely disclosed conclusory boilerplate in his Opening Report stating that Rudolph is a document "supporting and disclosing the iWeb software system."  (Ex. 15, Greenspun Exhibit M at 1.)   To the extent that he addressed Rudolph in his reply report after Dr. Almeroth leveled criticism, he provided no explanation whatsoever evincing that Rudolph bears any connection to the iWeb software, let alone to a particular version—yet Dr. Greenspun continues to rely on Rudolph anyway.  (Ex. 9, Greenspun Reply ¶¶ 1230, 1240-41, 1244, 1247, 1250, 1252, 1291, 1293, 1302, 1310, 1315.)  The Court should either exclude Rudolph because it has not been sufficiently tied to a version of the iWeb system, *or* the "iWeb" ground should be limited solely to Rudolph and not to any printed publications or declarations about the "iWeb" system.  GoDaddy and Dr. Greenspun cannot have it both ways.

*Finally*, to the extent this is a "system" ground (not Rudolph), Exhibit M of Dr. Greenspun's chart also lists a 54-page declaration of Christopher Schmandt (DTX474). This declaration was served on the very last day of fact discovery, makes purported "factual observations" about iWeb software, and has been designated by GoDaddy as testimony that it intends to offer as trial.[8] Dr. Greenspun admitted that he never had substantive conversations with Mr. Schmandt about iWeb, and Mr. Schmandt is not being brought to testify in this case. (Ex. 21, Greenspun Dep. at 6.) The declaration is hearsay and should be excluded from trial. *See, e.g.*, *NTP Marble, Inc. v. AAA Hellenic Marble, Inc.*, No. 09-CV-05783, 2012 WL 13014714, at *1 (E.D. Pa. May 4, 2012) (excluding hearsay declaration from trial).

Likewise, screenshots produced by Eric Halteen and Christopher Schmandt (DTX10) lack foundation from any sponsoring witness and should be excluded for similar reasons.

### C.   NexaWeb Should Be Limited to a Particular Version of the System, and Various Irrelevant References Should Be Excluded

For Nexaweb, it appears that GoDaddy and Dr. Greenspun are limiting their accusations to a version of the software called "Enterprise Web 2.0." (*See, e.g.*, Ex. 9, Greenspun Reply ¶ 1219.) To the extent that is true, Dr. Greenspun should be limited to documents that describe Nexaweb Enterprise Web 2.0. Once again, however, Dr. Greenspun's chart (Exhibit Q) amalgamates printed publication references from Coach Wei (Wei I-V, DTX191, DTX196-197, DTX203-204) that are not tied to the particular version of Nexaweb GoDaddy asserts. (Ex. 23, Greenspun Exhibit Q at 1.) Coach Wei admitted that he was not sure what was available in the Enterprise Web 2.0 software as opposed to other versions. (*See, e.g.*, Ex. 24, Wei Dep. at 63:4-15 ("Q. Do you also recall that

---

[8] The last day of fact discovery was June 16, 2021. (D.I. 99 and Oral Order.) The declaration was first provided to Express Mobile on that same date when GoDaddy served its Third Supplemental Invalidity Contentions. Mr. Schmandt was not listed on GoDaddy's initial disclosures or on its trial witness list.

24

counsel points you to paragraph 98 that lists a series of UI objects? A. Yes, I do. Q. As you sit here today, you cannot tell for certain which one of those UI objects was available in that EW2 software as of 2008? A. That's correct.").) Dr. Almeroth cited this testimony and explained that while "Dr. Greenspun cites to various patent applications by Mr. Wei, he makes no attempt to establish that the patent applications actually describe the asserted Nexaweb system." (Ex. 20, Almeroth Rebuttal ¶ 1544.) Dr. Greenspun's response simply cited swaths of Coach Wei's testimony and asserted without explanation that the patents described the Enterprise Web 2.0 Software. (Ex. 9, Greenspun Reply ¶ 1219 (citing Wei Dep. at 47-57).) But in the testimony Dr. Greenspun cited, Coach Wei testified that the "patent application may not reflect exactly what the product is at the time," and that he "do[es]n't think" that what was described in the patent was "ultimately used in Nexaweb." (Ex. 24, Wei Dep. at 50:6-19.) Moreover, Dr. Greenspun's cited testimony only addresses one of the five Wei patents and applications. (*Id.* at 47-57 (discussing only Exhibit 11 of the Wei Deposition).) This reinforces that Dr. Greenspun and GoDaddy cannot describe the *system* using printed patents and patent applications, and that the references to the Wei patents in this invalidity ground should be excluded.

## IX.    CONCLUSION

For all the reasons set forth above, Express Mobile requests the Court grant its motions *in limine*.

Dated: January 13, 2023

/s/ Timothy Devlin
Timothy Devlin (#4241)
tdevlin@devlinlawfirm.com
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, Delaware 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251

OF COUNSEL:
James R. Nuttall (admitted *pro hac vice*)
John L. Abramic (admitted *pro hac vice*)
Michael Dockterman (admitted *pro hac vice*)
Katherine H. Tellez (admitted *pro hac vice*)
Robert F. Kappers admitted (*pro hac vice*)
Tron Fu (admitted *pro hac vice*)
jnuttall@steptoe.com
jabramic@steptoe.com
mdocketerman@steptoe.com
ktellez@steptoe.com
rkappers@steptoe.com
tfu@steptoe.com
STEPTOE & JOHNSON LLP
227 West Monroe, Suite 4700
Chicago, IL 60606
(312) 577-1300

Christopher A. Suarez (admitted *pro hac vice*)
csuarez@steptoe.com
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-8131

*Attorneys for Plaintiff Express Mobile, Inc.*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that copies of the attached documents were served on counsel of record via electronic mail on January 13, 2023.

/s/ Timothy Devlin
Timothy Devlin